C. B. WORTHINGTON AND GEORGE A. DISSMORE, Trustees, v. THE OAK AND HIGHLAND PARK IMPROVEMENT COMPANY, *et al.*, Defendants, CAROLINE E. BYERS, Intervener, Appellant.

**Breach of Contract: TEACHERS:** *Damages.* A teacher wrongfully discharged before the expiration of the school year for which she was employed, may recover the entire contract price where, after reasonable effort, she was unable to secure another position, although she attempted to start a school of her own, which proved to be a financial failure.

**Receivers: CONTRACTS BY.** A receiver of a corporation authorized to conduct a college and employ teachers for the "ensuing" year, cannot repudiate a contract with a teacher for the ensuing year, merely, because the college, or her particular department, proves to be a financial failure, although the order empowering him gave him authority to make and adopt contracts, such as he might deem "necessary and *advantageous* to the successful operation of the college"

*Appeal from Polk District Court.*—HON. THOMAS F. STEVENSON, Judge.

WEDNESDAY, DECEMBER 9, 1896.

THE appeal in this case involves the validity of a contract alleged to have been made by Caroline E. Byers with L. M. Mann, receiver of the Highland Park Improvement Company, by which contract she alleges she was employed as a teacher by said receiver, and wrongfully discharged from said employment, in violation of said contract. There was a full hearing before the court, and it was found that the intervener was entitled to recover thirty dollars, which sum was ordered to be paid from the funds in the hands of the receiver. Caroline E. Byers, intervener, appeals.— *Reversed.*

*Cummins & Wright* for appellant.

*C. C. & C. L. Nourse* for appellees.

ROTHROCK, C. J.—I.   The petition in the main action was filed on the twenty-seventh day of July, 1893, by Worthington and Dissmore, trustees, to foreclose a trust deed executed by the defendant, the Oak & Highland Park Improvement Company, to secure payment of certain negotiable bonds.   The appointment of a receiver was demanded to take possession of the property of the corporation, including the Highland Park College, owned and operated by the improvement company.   On the same day that the petition was filed, the following order was made by the court: "And now, this cause coming on to be heard upon the application of the plaintiffs for the appointment of a receiver, the plaintiffs appearing by C. C. & C. L. Nourse, their attorneys, and the defendants, the Oak and Highland Park Improvement Company and Highland Park Normal College by E. J. Goode, their attorney, and O. H. Longwell by Barcroft & McCaughan, his attorneys, and L. M. Mann in person, and all parties consenting thereto, it is ordered and adjudged that L. M. Mann be, and he is hereby, appointed receiver of the property described in the mortgage, with full authority to take possession thereof, and receive, manage, and control the rents and income arising therefrom.   It is further ordered that the said receiver have authority, and he is hereby directed, to continue to operate the said college, as an institution of learning, affording like facilities as heretofore, and to operate the dormitories and boarding department of said college in connection therewith, and to make all contracts for professors, teachers, servants, helpers, and assistants he may find necessary to the successful operation and continuance thereof.   Said receiver

is also hereby authorized to employ the present president, O. H. Longwell, to take charge of the educational department of said college, upon such terms as he may agree upon with the said Longwell, and also to recognize and adopt any contracts now outstanding made by the said Longwell for the employment of professors for help for the ensuing year, or for printing and advertising for the ensuing year, and for work and labor and supplies for the ensuing year, so far as the said receiver may deem the same necessary and advantageous to the successful operation of the college. The receiver is also authorized to effect an insurance of the property, and to pay all taxes and assessments against the same. And the receiver is further authorized to issue receiver's certificates in payment of, or to raise money for the employment or purchase of work and labor, material, or supplies, as above authorized, and the same shall be a first lien upon any funds coming into his hands by virtue of his receivership; and the receiver has leave to apply to the court for such further order, or direction, as he may deem necessary from time to time to carry out the above orders. And it is further ordered that the said L. M. Mann, give bond in the penal sum of twenty thousand dollars ($20,000), with sureties to be approved by the clerk of this court, conditioned as required by law, for the faithful performance of his duties. Dated, July 27, 1893. [Signed.] C. P. Holmes, Judge." The intervener had been an instructor in the college for two or three years. The school year commenced in the month of August, and the receiver was appointed during the summer vacation. The intervener claims that, before the close of the school year in the summer of 1893, O. H. Longwell, the president of the college, entered into an oral contract with her, by the terms of which she was engaged as an instructor for the ensuing year, at the same rate of compensation

which she had theretofore received. She further averred that, after said Mann was appointed receiver, he completed said agreement for employment, by which it was contracted that she should continue as an instructor in the same branches of learning in which she had before been employed. She averred that she entered upon the performance of her duties under said contract at the opening of the college year, and continued under the contract until September 30, 1893, when the said receiver dismissed and discharged her from further service as an instructor under said contract; and she demands that the receiver be required to pay her, from the funds in his hands, the sum of one thousand one hundred and seventy dollars, the balance which would be due for the year's service if she had not been wrongfully discharged. It is admitted in the answer that the intervener was employed by the college, beginning with the fall of 1890, and ending with the summer of 1893; and it is admitted upon information and belief, that the intervener entered into a contract with O. H. Longwell, the president of the college, for one year, commencing September, 1893, and to continue until the summer of 1894, but that plaintiffs have no knowledge, or information, sufficient to form a belief as to the exact terms of said employment. It is denied that the receiver entered into any contract to employ intervener for the whole of the school year, and that he notified her that he was only acting as receiver, and that he could only employ her for such time as her services should prove to be beneficial in conducting the operation of the college. It is admitted that intervener performed the duties of an instructor for about five weeks under this arrangement with the receiver, and that she was then dismissed from said employment, for the reason that the entire receipts from the department of elocution and physical culture,

of which the intervener was principal, were far less than the salary agreed to be paid her, and said department was no longer beneficial to the interests of the parties owning the property. Other averments of the answer need not be here referred to.

The first question to be considered is whether the intervener was employed by the receiver for the school year. We have stated the respective claims of the parties as to the terms of the contract. There is no dispute that O. H. Longwell, the president of the college, employed her for the ensuing college year. But as the property of the improvement company, including the college, went into the hands of the receiver, the contract with Longwell could not have been enforced as against the receiver. We do not understand that anything is claimed by the intervener for that contract, more than that the receiver recognized it, and adopted it, and made a contract upon the same terms, as he was authorized to do by the order appointing him receiver. The main question of fact, then, is, what was the contract made by the receiver? This must be determined by the evidence. The testimony of the intervener and the receiver are in conflict. And it is to be conceded that she, to say the least, was mistaken in testifying to the contents of a letter that she wrote to the receiver. She claimed in her testimony that the letter was on the subject of her employment for the year. When the letter was produced, it had no reference to future employment. It related to payment of arrears due to her for the previous year. This letter was written at the city of Oskaloosa, where intervener was stopping at the time. Notwithstanding this mistake in the testimony of the intervener, we think her version of the contract made with the receiver is corroborated by many circumstances in the case. The main corroborative fact is found in a letter by the receiver to her,

written on the third day of August, 1893. The following is a copy of that letter: "Des Moines, Iowa, August 3, 1893. Miss Caroline E. Byers, Oskaloosa, Iowa— Dear Friend: Your letter of August 2d is at hand. I was appointed last week by the district court, receiver for the Highland Park College, with authority to operate the same. Mr. Longwell will continue at the educational head of the school, while I will have charge of the finances. I will make good the contracts, that the president has with the teachers the coming year. The school will continue beyond any doubt. Do you wish to stay for the next year? As to pay for last year, I have nothing to do with that. I don't know what the old company will do. Am sorry to hear of your mother's sickness. Your friend, L. M. Mann." This is a distinct promise to make good the contracts that the president had with the teachers for the year. It was an inquiry as to whether she desired to remain in the employment of the college for another year. She went to Des Moines in response to this letter, and, in an interview with the receiver, the arrangement was made. Then there is the circumstance, well known to all the parties, that teachers in colleges are usually hired for the school year; and we have set out the order appointing the receiver, for the purpose of showing that the college was to be continued for a year. We will not occupy space to analyze the order here. It is not necessary to do so. It gave the receiver authority to recognize and adopt any contract made by Longwell, for the employment of professors "for the ensuing year," and for printing and advertising "for the ensuing year." It is true, as claimed by counsel for appellee, that the receiver was to use his judgment and discretion in performing his duties, and make such contracts as "he may find necessary to the successful operation and continuance of the school,"

and such as he might deem "necessary and advantageous to the successful operation of the college."

3     It is said that, if the contract was for one year, it was an imprudent undertaking, and the receiver had authority to revoke and rescind it, in the interest of the college and the creditors. If this were an ordinary decree in case of the appointment of a receiver, there, would no doubt, be force in this position. But this is a case where the representatives of the bondholders, the insolvent corporation, the college, the president of the college, and the receiver, were all before the court, either by attorney or in person, and consented to the decree. It contemplated the continuance of the college for the "ensuing year." The authority was to ratify Longwell's contracts for "the ensuing year." We do not hold that the receiver was required by the decree to employ the instructors for the year, but that he had the authority to do so. Having exercised his judgment as to what was necessary and advantageous for the successful operation of the college, and entered into contracts with instructors, we cannot discover any reason why the contracts should not have been performed. There was no objection to the intervener as an

4     instructor. The receiver testified as a witness that "she was a good teacher." It is true, that the undertaking to carry on the college for the year was a financial failure; and the intervener was discharged, because her department paid but a small part of its expenses. The receipts of the college for the year were between fourteen thousand and seventeen thousand dollars less than the expenses. But that was no reason for repudiating contracts with teachers which were authorized to be made by the decree. Where a contract by a receiver is authorized by the order of the court appointing him, the obligation is

binding, and should be performed. Gluck & B. Rec. section 78, and authorities there cited.

II. The next and only question necessary to be considered, is the measure of intervener's recovery. She was discharged from her employment at the college on the thirtieth day of September. She endeavored to obtain employment. She testified on that subject as follows: "I was unable to find employment for the remainder of the year. I could not secure a position. I wrote a number of letters, went to the state superintendent and county superintendent, and wrote to as many of my friends as I could find out that had means of employing any one in my line of work, and even tried to get other lines of work. It was just after all the public schools had been in session a short time; so it was impossible to get a position. After making all these efforts, I was unable to find employment; and, after failing in this, I tried to start a school, but it was not financially successful, and did not pay expenses. The operation of that school resulted in a loss, although I used every effort within my power to make it a success." There is no evidence in conflict with her testimony. The school which she organized was put in operation some eight or ten days after she was discharged. The district court awarded her a sum equal to what her salary was at the college, until she started her school. We do not understand why her right to compensation was thus limited. The law appears to be well settled, that where an employe is discharged without cause, before the end of the contract of service, and is unable to find other employment, he is entitled to recover the contract price for the time he was prevented, by the discharge, from performing his undertaking. In such a case, it is the plaintiff's duty to accept any subsequent engagement which he can, with reasonable effort,

obtain, so as to make the damages as light as possible. *Muller v. Fern,* 35 Iowa, 420. See 2 Sedgwick, Damages, page 82; 2 Sutherland, Damages, section 693. Our conclusion is, that the intervener should have been allowed full compensation for the remainder of the school year.

III. This disposition of the case renders it unnecessary to determine a motion of appellant to tax the costs of an additional abstract to appellee. The case will be remanded to the district court, to enter up judgment for the proper amount, in accord with this opinion.—REVERSED.