ELWOOD BERTHOLF, Appellant, v. F. N. FISK et al., Appellees.

MASTER AND SERVANT: Wrongful Discharge—Damages—Mitigation—Burden of Proof. The prima-facie measure of damages for the wrongful discharge of a servant is the contract wage. The defending master may counter with a showing, in mitigation, of what the discharged servant actually did earn, during the contract period, in *any* line of employment, or of what he might reasonably have earned in employment of the same general nature as covered by the contract.

DAMAGES: Measure of Damages—Adopting Minimum in Lieu of Maximum. A litigant may adopt a minimum measure of damages in lieu of a maximum fixed by law. So held where a wrongfully discharged servant, instead of demanding the measure of recovery fixed by law, demanded recovery for the cash deposit made by him in order to secure the employment.

MASTER AND SERVANT: Wrongful Discharge—Damages—Unauthorized Mitigation. A master who grants employment upon the servant's making a cash deposit, and then wrongfully discharges the servant, may not, in defense of an action to recover the deposit, prove, in mitigation of damages, what the servant did earn or might have earned, during the period of wrongful discharge, in other employment.

CONTRACTS: Acceptance—Acquiescence and Acceptance of Benefits. One who is, originally, an entire stranger to a contract, may be legally bound thereby by subsequent acquiescing conduct, including the accepting of benefits. So held where the agent of a corporation individually entered into a contract with a subagent, and the corporation received and retained the consideration advanced by the subagent.

CONTRACTS: Construction—Parties—Nonprivity. No privity of contract exists between agents who have separate and distinct contracts with the same principal, covering separate and distinct territory, in which contracts each agent agrees to forfeit to his *principal* a stated discount in case he sells the prin-

cipal's goods outside the territory covered by his contract. It follows that an agent who sells in prohibited territory is not liable in damages to the agent in such territory.

*Appeal from Des Moines Municipal Court.*—ESKIL C. CARLSON, Judge.

MARCH 12, 1918.

ACTION for damages for breach of a contract of employment. By a second count, also, the plaintiff claimed a commission of $25 for the sale of a motor truck. The defense was a general denial and certain counterclaims. At the close of the evidence, the trial court dismissed plaintiff's first count and submitted to the jury plaintiff's second count and the counterclaims of the defendant. There was a verdict for the plaintiff, on the second count, for $25, and he has appealed.—*Affirmed in part; reversed in part.*

*Opal Boling* and *C. C. Putnam,* for appellant.

*Read & Read* and *William B. Hurlburt,* for appellees.

1. MASTER AND SERVANT: wrongful discharge: damages: mitigation: burden of proof.

EVANS, J.—I. The defendant Fisk was engaged in the business of selling automobiles on commission for the Guarantee Motors Company. He entered into a written contract of employment with the plaintiff, whereby, for a consideration of $500 paid by the plaintiff, the defendant employed him for a period of six months, at an agreed compensation of $20 per week, and a further compensation of one half the net profits upon all sales of automobiles which the plaintiff might make in such period. The employment continued for eleven weeks, at the expiration of which time, as alleged by plaintiff, the defendant wrongfully discharged him, and has ever since refused to pay him any wages, or to return to him any portion of the $500 which the plaintiff had paid. The contract was en-

tered into on January 3, 1916. The evidence on behalf of plaintiff tends to show that he was wrongfully discharged. At the close of the evidence, the court dismissed Count 1 of plaintiff's petition, on the ground indicated as follows:

"The court, after considering the motion of both plaintiff and defendant for directed verdict, has concluded that it was the duty of the plaintiff in this case, upon his discharge, to seek employment of the same general nature, and that the testimony conclusively shows that the plaintiff made absolutely no effort to seek any employment of the same general nature or that which he wished to perform for the defendant, but that he did, practically immediately after his discharge, return to the farm and enter into the business of farming. If the plaintiff entered into said business of farming without the consent of the defendant, either expressed or implied, the plaintiff would not be entitled to recover in this case, and the court is of the opinion that, in adopting the testimony to the best advantage of the plaintiff, that it shows that all negotiations for the plaintiff to return to the farm were ended after the conclusion of the negotiations for the closing of the contract, and that thereafter and subsequent, and either soon thereafter or immediately, the defendant discharged the plaintiff without just cause, and nothing was said concerning the plaintiff's returning to the farm, and no consent was given."

It will be noted from the above that the court found: (1) That the defendant discharged the plaintiff "without just cause;" (2) that the plaintiff failed to make any effort to seek employment of the same general nature, but that he entered into the business of farming; (3) that the defendant never consented that the plaintiff should enter into the business of farming.

The dismissal was based upon the second and third grounds here stated. The second and third findings of fact made by the court are sustained by the record. The plain-

tiff did go to work upon a farm, and did not try to get other automobile work. The legal conclusions drawn by the court from these facts were erroneous. Disregarding, for a moment, the fact that the plaintiff had paid $500 as a consideration for his employment for a term of six months, and looking at the case as an ordinary one of employment for a fixed term, and a wrongful discharge, the prima-facie measure of damages in favor of the discharged employee is his contract wage for the unexpired term, less what he actually earned during such unexpired period, in whatever occupation, or what he might have earned with reasonable diligence in other employment of the same general nature. It is the privilege of the defendant to show such earnings, actual or reasonably possible, in reduction or mitigation of damages. It was the duty of the plaintiff to reduce his damages by reasonable effort to obtain other employment. This duty went no further, however, than that he should seek other employment of the same general nature. He was not bound to seek employment of a different nature. On the other hand, it was not forbidden to him to seek employment of a different nature, or to engage therein. If the plaintiff had made a reasonable effort to secure employment of the same general nature, and failed, such effort would be conclusive upon the defendant. If he failed to seek employment of the same general nature, then it was still open to the defendant to show, in reduction of damages, what employment of such general nature the plaintiff could, with reasonable effort, have obtained, and what he could have earned therein. The plaintiff's case was not, as a matter of law, forfeited by his failure in that regard. His failure to make the effort simply subjected him to the same rule of mitigation as he would have been subject to if a reasonable effort on his part would have resulted in such mitigation. On the other hand, if the plaintiff chose other occupation of a different nature, it was open to the defend-

ant, at his option, to show plaintiff's actual earnings in such occupation, in reduction of damages. The plaintiff would commit no wrong by choosing such other occupation. An employee wrongfully discharged is not bound to acquire the consent of his former employer to engage in some different occupation. He is bound only to use reasonable effort to reduce his prima-facie damages. He is not bound to extend this effort beyond employment of the same general nature. But if he does engage in different employment, he has not thereby sinned. *Kelley v. Royal Neighbors,* 158 Iowa 547; *Worthington v. Park Improvement Co.,* 100 Iowa 39.

In *Howard v. Daly,* 61 N. Y. 362, the general rule is stated as follows:

"*Prima facie,* the plaintiff is damaged to the extent of the amount stipulated to be paid. The burden of proof is on the defendant to show either that the plaintiff has found employment elsewhere, or that other similar employment has been offered and declined, or, at least, that such employment might have been found. I do not think that the plaintiff is bound to show affirmatively, as a part of her case, that such employment was sought for and could not be found. Greenleaf on Evidence, Sec. 261 a; *Costigan v. M. and H. R. R. Co.,* 2 Den. 609. * * * Her action was for damages for not being permitted to work, and not for wages; and the defendant might show affirmatively, and by way of mitigation of damages, that she had opportunities to make a theatrical engagement elsewhere, which she did not accept. Without such proof, she was entitled to recover the full amount of the compensation stipulated in the contract."

There is another element in this case, however, which makes the rule here considered of little value to defendant. The plaintiff paid $500 for the privilege of the employment. This sum was just sufficient

2. DAMAGES: measure of damages: adopting minimum in lieu of maximum.

to pay him $20 a week for six months. The amount paid by him to Fisk was deposited by Fisk with the Guarantee Motors Company, as a special deposit out of which the plaintiff's wages of $20 per week were paid. In a sense, therefore, the plaintiff had paid his own wages in advance for the six months, for the privilege or chance of earning commissions on the sales which he might make. The plaintiff took all the chances of failure, and the defendant took none. Of the amount thus paid by the plaintiff, $220 was paid to him in instalments of $20 per week, as wages. He has chosen to declare as his measure of damages the unpaid portion of the $500 thus paid. We think he was entitled to declare upon such measure of damages, *prima facie*.

As to such measure of damage, we do not think it would be open to the defendant to show in reduction what plaintiff could or would earn by other employment, whether of the same general nature or not. To have obtained the same kind of a contract as he had with the defendant would have required the payment by plaintiff of another $500. That was an experiment which he could not be required to repeat. If the plaintiff were predicating his claim for damages upon unearned commissions, a different question would be presented. Such a claim would doubtless subject the plaintiff to a reduction or mitigation in the manner already considered. But the plaintiff claims nothing for unearned commissions. The defendant, therefore, has no interest in his other employment. If, therefore, it be found that the plaintiff was wrongfully discharged at the expiration of eleven weeks, there is no reason apparent in this record why he should not be permitted to recover the unexpended portion of the $500 paid by him, as his prima-facie measure of damages. He was not bound to adopt such measure of damages, but he had a right to do so, at his option. It was a minimum measure, and he

3. MASTER AND SERVANT: wrongful discharge: damages: unauthorized mitigation.

could adopt it in lieu of a maximum. It must be said, therefore, that the trial court erred in dismissing Count 1 of plaintiff's petition.

II.   The plaintiff sued jointly the two defendants, Fisk and the Guarantee Motors Company. The question still remains whether these defendants were properly joined, and whether the Guarantee Motors Company was in any manner liable to the plaintiff. The contract of employment was in writing, and purported to be entered into by Fisk, as party of the first part, and Bertholf, as party of the second part, and it was so signed. The only reference therein to the Guarantee Motors Company was Paragraph 2, as follows:

4. CONTRACTS: acceptance: acquiescence and acceptance of benefits.

"Party of the first part further agrees to pay to party of the second part one half of the net profits on any cars, automobiles, or trucks sold by the party of the second part from the stock of the Guarantee Motor Co. during the term of this agreement, basing first cost of Kissel cars and trucks at 20 per cent of the list, plus freight."

Fisk was the "manager" of the Guarantee Motors Company. He was so held out, not only by himself, but by the officials of the company. His contract with the Guarantee Motors Company, however, entitled him only to commissions on business done. Though the Guarantee Motors Company did not sign the contract in question, and were, therefore, not bound thereby, except at their subsequent option, it will be noted, nevertheless, that the subject-matter of the contract had to do with the property of the Guarantee Motors Company. The automobiles that were to be sold by the plaintiff for a commission were to be sold from the stock of the Guarantee Motors Company. Sales thus made would necessarily be made in the name of the Guarantee Motors Company. The commissions to be paid to the plaintiff would necessarily be paid by the Guarantee Motors

Company. While, therefore, the Guarantee Motors Company was not bound by the terms of the contract, and was at liberty to refuse or repudiate the same, yet such refusal would have rendered the contract wholly nugatory, as between the parties thereto. It was only by the assent of the Guarantee Motors Company that the contract could be carried out at all by the parties thereto. To assent thereto would be to become party thereto, at least for some purposes, and to some extent. Furthermore, the $500 which plaintiff agreed to pay was so paid by the delivery of a bank certificate of deposit. This certificate was delivered to the Guarantee Motors Company, and duly negotiated by it. It entered the same upon its books, in what it called a "special account." Out of this "special account," it drew a weekly check for $20 for the payment of the plaintiff's weekly wages, and charged the same to this "special account." When the plaintiff was discharged, this special account upon the books of the Guarantee Motors Company showed a credit balance of $280. Having received and accepted the benefit of the consideration paid by the plaintiff, it should be deemed to have ratified the contract made by its manager. This has been the repeated holding of this court for many years, on the subject of ratification by a principal. We do not lose sight of the fact that the relation between Fisk and the Guarantee Motors Company was not wholly one of principal and agent. It is possible that a liability could be predicated upon a breach of this contract as against Fisk which would not reach the Guarantee Motors Company. But we have no occasion to speculate in that regard. Inasmuch as the plaintiff has confined himself in his claim to the particular measure of damages already indicated, we think it clear that, to that extent, the Guarantee Motors Company is liable as one having made itself a party to the contract by mutual conduct and acquiescence, including the acceptance of benefits. Fisk is liable,

if at all, not because he is the agent of his codefendant, but because he breached the contract to which he had expressly bound himself. We reach the conclusion, therefore, that it was error to dismiss Count 1 of the petition against the Guarantee Motors Company, as well as against Fisk. Whether the Guarantee Motors Company should have been held as to the second count of plaintiff's petition, we do not consider; because this question is not presented in appellant's brief.

III. The defendant Fisk pleaded a counterclaim in two counts. The first of such counts pleaded a claim for damages for negligent conduct on the part of the plaintiff in the sale of a secondhand Chase Motor truck, and in including in such sale a new engine which was in temporary use in such truck, instead of its own secondhand engine, which was then undergoing repairs. The second count of such counterclaim claimed damages for a certain wrongful invasion of the defendant Fisk's territory for the sale of Kissel cars. These counterclaims were submitted to the jury, and the finding thereon was adverse to the defendant, and we have no occasion to consider the propriety of such counterclaims, so far as the defendant Fisk is concerned. It appears from the record, however, that the second count of such counterclaim was pleaded also as a counterlaim on behalf of the Guarantee Motors Company. It was dismissed without prejudice by such defendant, when the trial court dismissed the plaintiff's petition as against it. In view of the attention which the counterclaim received on the trial below, and in view of the necessity of a new trial, we ought, perhaps, to make some reference to such counterclaim, for the guidance of the parties. It appears that the plaintiff at the time of his contract of employment, had been recently a dealer in automobiles in the town of Winterset. As such, he was agent for the Kissel cars

5. CONTRACTS: construction: parties: non-privity.

for certain territory not including Polk County. He had two Kissel cars on hand. His contract of employment reserved to him the right to sell the same. The Guarantee Motors Company was the agent for the Kissel cars for Polk County. Its contract with the manufacturer contained the following provision:

"Second party further agrees not to sell Kissel cars in any other territory than that described herein, and in cases of unauthorized sales, he is to pay to the first party a sum equal to the discount on the car so sold."

The contract of agency between the plaintiff and the Kissel Car Company previously existing contained a similar provision. This counterclaim was predicated upon the theory that, by reason of this provision in the contract made by the Kissel Car Company with its various dealers, if one dealer sold a Kissel car within the territory of another dealer, he became liable for damages to the dealer whose Kissel car territory was thus invaded. This is assuming that every dealer in Kissel cars, under such a contract with the manufacturing company, became a party to every contract and in privity with every other Kissel car dealer in the state under similar contract. Such theory is clearly unsound. The rights and liabilities of each dealer were determined by the terms of his contract with the manufacturer. This contract with the manufacturer bound the dealer, in fact, to pay list price, without discount, for such cars as he might sell outside of his prescribed territory. The measure of his penalty for transcending his territory was thus fixed. His liability therefor was to the manufacturing company, and to no one else. The plaintiff, therefore, was not liable to either defendant for damages for the sale of the Kissel cars, upon the ground predicated in the counterclaims. The question naturally suggests itself whether he might be liable, not because of the provisions in the dealer's contract, but on the ground that his conduct

was a breach of his duty as an agent or employee, under his contract of employment, and whether, in any event, such conduct might not afford sufficient ground for his discharge. This query is quite answered by the written contract of employment itself. The third paragraph thereof was as follows:

"Party of the second part is to have the privilege of selling the two Kissel cars he has now on hand with no profit to party of the first part, and he agrees to keep a Kissel car for his own use and maintain the same at his own expense during the term of this contract."

This paragraph is somewhat indefinite. It does not specify the territory where the plaintiff might sell the Kissel cars, but it does provide that they might be sold without profit to his employers. Inasmuch as the Guarantee Motors Company, under its contract with the Kissel Car Company, could make no sales outside of its own territory, and could, therefore, have no profits in any other territory, the fair construction of this proviso in the contract is that it was intended as an unqualified permission to the plaintiff to sell his Kissel cars without profit to the employer, even though made within its territory.

IV. The defendant Fisk served notice of a cross-appeal. He has not pressed the appeal, however, in his brief, further than to urge upon us that the verdict for $25 in favor of the plaintiff was without support in the evidence. This contention quite disregards the evidence of the plaintiff as a witness. The credibility of it was for the jury. Upon the appeal of the defendant, the judgment below must be affirmed. Upon the appeal of the plaintiff, as to Count 1 of his petition, the order of dismissal is reversed, as to both defendants.—*Affirmed in part and reversed in part.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.