FIRST NATIONAL BANK OF ALBIA et al., Appellees, v. WHITE ASH COAL COMPANY et al., Appellees; ROSELAND FUEL COMPANY, Intervener and Appellant.

RECEIVERS: Contracts Extending Beyond Receivership. One who, without the approval of the court, enters into a contract with a receiver for a definite time, with knowledge that the receiver

was contemplating an early closing of the business by a sale, may not hold the trust funds for damages consequent on a breach of the contract because of a sale prior to the expiration of the contract period.

**RECEIVERS:** Unauthorized Contract—Acquiescence.   Creditors
2   who are entitled to the funds derived from a receivership may not be said to have "acquiesced" in an unauthorized contract by the receiver, from the naked fact that they had some indefinite knowledge of such contract.

*Appeal from Monroe District Court.*—D. M. ANDERSON, Judge.

FEBRUARY 16, 1920.

REHEARING DENIED MAY 11, 1920.

ACTION in equity to foreclose a combined real estate and chattel mortgage on a coal mining property, given to plaintiffs. In connection with the foreclosure, plaintiffs applied for and had appointed a receiver, to take charge of the property pending the foreclosure and sale thereof. The action was begun and the receiver appointed September 29, 1916. Judgment and decree was entered in favor of plaintiffs, December 2d thereafter. The defendant coal company was wholly insolvent, and the property was in a run-down and dilapidated condition. By authority of the court, the receiver borrowed about $7,000, to put the property in shape so it could be operated until a sale was made. Appellees contend that the property was operated at a loss; and this may be so, as to the first month or so, but thereafter, there was a shortage of coal and an increased demand therefor. As we understand the amended record, the receipts or gross earnings for the entire time of the receivership exceeded the expenditures by about $50. The gross earnings amounted to nearly $45,000. But the total receipts and proceeds of the sale are not enough to satisfy the plaintiffs' claims and pay the costs and expenses of the re-

ceivership. There will be a deficit, even if the judgment against intervener is paid. The receiver operated the mine about 2½ months. In December 15, 1916, the property was sold by the receiver, according to the provisions of the decree, and the purchase money paid, and the property turned over to the purchaser. The intervener, which is a nonincorporated concern, owned by W. A. Linton and his wife, and managed by said Linton, was not made a party to the foreclosure proceedings. After the sale of the property on December 15th, to wit, on December 21, 1916, the intervener filed a petition of intervention, claiming damages for the breach of a written contract entered into by the intervener and the receiver, without authority or order from the court, as appellee contends, but with authority, at least implied authority, as intervener says, by which the receiver agreed to furnish certain quantities of coal to intervener to March 31, 1917. Coal was furnished up to the time of the sale of the property, but not all paid for by intervener. The alleged breach of the contract is for the failure to furnish coal thereafter to the end of the contract. The damage claimed by intervener is the difference between the contract price and the market price of coal during the term of the agreement. The petition of intervention claims $5,000 damages, but intervener claims that the proof shows about $2,000, or something under that. The receiver filed a cross-petition to the petition of intervention, asking judgment against intervener for coal actually furnished up to the time of the sale, in the sum of $912.64. It was conceded on the trial by intervener that he was indebted to the receiver in that amount, that being the balance on the itemized statement attached to the receiver's cross-petition. After a full trial, the trial court held that intervener was not entitled to recover on the contract after the sale of the mine, dismissed the petition of intervention, and rendered

judgment against intervener on the receiver's cross-petition. Intervener appeals.—*Affirmed.*

*D. W. Bates* and *Gilmore & Moon,* for appellant.

*J. C. Mabry,* for appellees.

PRESTON, J.—The controversy is over the proposition whether intervener is entitled to damages for a breach of the contract after the sale, which appellees contend would have the effect to compel plaintiffs, having valid liens, to pay such claim; and they claim, too, that it would require the operation of the mine till March 31, 1917, at a loss, for the sole benefit of intervener.

1. RECEIVERS:
contracts ex-
tending beyond
receivership.

Separate answers to the intervention were filed by the receiver and the plaintiffs, in which four or five defenses are set up, but all of which we need not discuss. As we view it, the controlling question is whether the receiver, concededly an officer of the court, had authority, under this record, to make a contract which would be binding and enforcible in the future, and after the sale of the property. Before proceeding to the merits, it may be well to notice one or two further matters.

It is thought by appellant that there is an estoppel as against plaintiffs and the receiver, because, as is claimed, the plaintiffs knew of the contract and its provisions, and acquiesced therein.

2. RECEIVERS:
unauthorized
contract:
acquiescence.

Appellees concede that they knew coal was being furnished intervener, and that there was some arrangement, but they deny that they had any knowledge of the terms of the contract or the time it was to run, and say they never saw the contract or a copy of it, until the trial of the case. On the other hand, a sale of the property was contemplated from the start, and this was known to intervener. Its manager, Linton himself, contemplated a purchase of the property, and aided the receiver

in trying to find a purchaser. Under the authorities, the very purpose of a receivership of a private insolvent corporation is to close up its business and distribute the property or proceeds speedily, and it should not be operated at a loss. There may be other circumstances in the evidence bearing on this point, but we think the record does not show acquiescence or an estoppel, if intervener had pleaded an estoppel, and even though an estoppel would operate, as against the court, which is questioned by some of the cases.

The orders of the court which have a bearing will be set out. The order appointing the receiver provides:

"That the receiver take immediate charge of all the mining property, equipment, and assets of every kind connected therewith, and preserve the same, and he is hereby authorized to employ such help as may be necessary to preserve and maintain all the said property, and to keep the said mine in reasonably good condition, and to operate the same mine, if, in his judgment, it can be so operated within the income arising from the operation thereof, and the sale and marketing of coal therefrom, and he is authorized to make such contracts for the marketing of coal therefrom as, in his judgment, will produce sufficient income to keep said mine in reasonable condition for operation, and keep the same in operation during such periods of time as, in his judgment, the business thereof will justify, * * * and conduct all said business as, in his judgment, will best preserve and maintain said property in condition to bring the largest price, in case a sale thereof shall be ordered, and all till the further orders of the court or a judge thereof in the premises."

Soon after the appointment of the receiver, he made application to borrow money for repairs and operating expenses, in which he alleged that:

"It is necessary to keep said mine in operation to whatever extent its products can be marketed, in order to keep

the said mine from rapidly deteriorating and diminishing
in value. * * * He believes the said mine can be kept in
condition to be operated at a profit during the receivership,
and in such condition to sell for enough more than in its
present condition to justify the expenditures."

The order was granted, and it provides, among other
things, that, in order to prevent the property from rapidly
deteriorating and decreasing in value, it is necessary to keep
the same in operation to whatever extent its products can
be readily sold on the market. The court seems to have
refused to recognize as binding any contract that would tie
up the property, or be an incumbrance on it in the future;
for, in the order of sale, it is expressly provided that the
property should go to the purchaser "divested of all con-
tracts for the sale of coal made by the receiver, and which
shall be held to terminate with the sale of said property
by the receiver." The receiver testifies that it was his in-
tention to sell the property as soon as he could find a
purchaser at the price the court would authorize him to sell
for, and that, because he didn't have the money to make the
necessary repairs and extension work, the mine could not
have continued to operate through the winter to the first of
April; that, if the property had not been sold in December,
he would have been compelled to shut the mine down, and
there would have been nothing to the mine,—no funds to
do anything with. Appellant relies upon the language of
the order appointing the receiver, that he is authorized to
make such contracts for the marketing of the coal as will, in
his judgment, produce sufficient income to keep the mine in
operation, etc. But this would not authorize the receiver
to make any improvident contracts, or contracts unlimited
in number or time, nor does it specifically authorize him to
make a contract to April 1, 1917; nor do we think there is
any implied authority for the receiver to do so, when the
language is considered in connection with other language in

the order, and all the circumstances of the case. The language relied on is limited by other provisions in the same order. For instance, the receiver is to operate the mine if, in his judgment, it can be operated within the income, and again, to operate it for such period of time as, in his judgment, the business will justify, and to conduct the business so as to best preserve and maintain the property in condition to bring the largest price in case of a sale. As said, the receiver testifies that, in his judgment, he could not have longer operated the mine in accordance with his order of appointment.

Code Section 382f provides:

"Subject to control of the court or judge, a receiver has power to bring and defend actions, to take and keep possession of property, to collect debts, to receive the rents and profits of real property, and, generally, to do such acts in respect to the property committed to him as may be authorized by law or ordered by the court."

The receiver stands indifferent, as between the parties, though appointed on the application of one of them, and must prudently preserve and protect the property entrusted to him as an officer of the court. The property is *in custodia legis*, and the receiver acts for the court, as its creature or officer, having no powers save those conferred upon him by its orders, or reasonably to be implied therefrom. He is subject to the court's directions and orders in the discharge of his official duties, and at all times is entitled to apply to the court for instructions. *State Cent. Sav. Bank v. Fanning Ball-Bearing Chain Co.*, 118 Iowa 698; *Bank of Montreal v. Chicago, C. & W. R. Co.*, 48 Iowa 518; 1 Clark on the Law of Receivers (1918 Ed.), Sections 15 and 18.

A business should not be continued under a receivership when it cannot be conducted except at a loss. When it becomes apparent that the business cannot be conducted save at the expense of the estate, and no ulterior benefit is

reasonably to be anticipated, the officer, in the exercise, of reasonable prudence in the care of the property entrusted to his keeping, should proceed no further without specific directions. 34 Cyc. 286. The same volume, page 287, reads:

"The courts, however, decline to sanction the exercise of this discretion on the part of receivers in respect to large outlays or contracts extending beyond the receivership and intended to be binding upon the trust."

"Although, as receiver, he may enter into negotiations and make such agreements as would be binding upon him as an individual, yet, in order to affect the funds in his hands, his acts must be ratified by the court. This rule is so well established that it has been decided that all persons contracting with a receiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their peril, and that the court has unquestioned power to modify or even vacate his agreements." Beach on Receivers (Alderson's Ed.), Section 270.

See, also, High on Receivers (4th Ed.), Section 186; *Chicago Deposit Vault Co. v. McNulta*, 153 U. S. 554 (38 L. Ed. 819).

Appellant relies largely upon the case of *Worthington v. Oak and Highland Park Impr. Co.*, 100 Iowa 39. They also cite *Shreve v. Hankinson*, 34 N. J. Eq. 413; *Weeks v. Weeks*, 106 N. Y. 626 (13 N. E. 96); *Yetzer v. Applegate*, 85 Iowa 121; *Brown v. Winterbottom*, (Ohio) 120 N. E. 292. In the *Worthington* case, some of the discussion might be considered favorable to appellant, but, as to the main points involved, it is readily distinguishable from the instant case. In that case, the court had made an order which provides in part as follows:

"It is further ordered that the said receiver have authority, and he is hereby directed, to continue to operate the said college as an institution of learning. affording like facilities as heretofore,  *  *  *  and to make all contracts

for professors, teachers, servants, helpers, and assistants he may find necessary to the successful operation and continuance thereof   *   *   *   and also to recognize and adopt any contracts now outstanding made by the said Longwell for the employment of professors for help for the ensuing year, or for printing and advertising for the ensuing year, and for work and labor and supplies for the ensuing year."

Under this order and authority, the receiver employed an instructor for the school year, but, at the expiration of one month, discharged her, and attempted to terminate her contract. She asked damages for breach of the contract, and her claim was sustained. She was discharged only because the department which she was conducting was not self-supporting. The whole college was conducted at a loss, yet it was operated under the receiver for the year for which the instructor had been employed. The order of appointment contemplated that the school should be operated by the receiver during the year. It specifically directed the receiver to employ teachers to operate the college, and authorized the receiver to adopt and recognize any outstanding contracts made by the president for the employment of professors for the ensuing year. The court found that the instructor was employed by the president and by the receiver himself. In that case, it was in contemplation of the court and all parties interested, that the college should not be sold by the receiver, but operated during the ensuing year. The receiver urged that the contract was an imprudent undertaking, and that the receiver had authority to revoke and rescind it, in the interest of the college and creditors, and the court said that, if it had been an ordinary decree in the case of the appointment of a receiver, there would, no doubt, be force in such position. In the respects mentioned, that case differs from the one at bar. Here, the appointment did not authorize the operation of

this coal mine during the ensuing year, or for any definite length of time.

The *Shreve* and *Weeks* cases, supra, are similar. There, it was evident from the beginning that the litigation would be pending through a period of years, which fact was submitted to the court, and the court specifically ordered the receiver to make a lease for three years. This was known to and acquiesced in by all parties interested. When the three-year term expired, the litigation was still pending, with the prospect that it would continue for at least another three years; and the court specifically directed the receiver to extend the leases for another three-year period. Contrary to expectations, the litigation terminated before the last three-year period expired, and objection was made to the continuation of the leases to the end of the term. Under such circumstances, it was held that the equities were in favor of the tenants, and should be considered in view of all the conditions. Such is not the situation in the case now before us.

*Brown v. Winterbottom,* supra, was a case of negligence, holding that liability for personal injury, growing out of the operation of property by a receiver, is a part of the expenses and liabilities of the receivership. We think it is not in point on the question being now considered. Nor does the *Yetzer* case apply to such a case as this.

Other and additional matters set up by receiver and plaintiffs in answer to the petition of intervention are that appellant was not entitled to recover because of liens on the property in favor of plaintiffs which had existed for a considerable time before the receiver was appointed, and that the receiver took the property subject to the payment of such prior liens, and that such incumbrances are entitled to protection; also, that the agreement between the receiver and intervener was made with the understanding that the property was for sale, and that, if sold, that would

terminate the agreement; and further, that the intervener was in default in the performance of his part of the contract from the time it was made until the time the property was sold; that the receiver was in need of money to operate the mine; and that the intervener's default hampered the receiver in carrying on the mine; and that, for that reason, the receiver was not bound to continue to furnish coal after the default; and some other matters.

As before stated, we deem it unnecessary to go into these matters in detail. After considering the entire record, we reach the conclusion that the judgment of the district court was right. It is, therefore,—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.