JAMES A. PRIESTLY, Appellant, v. ASSOCIATED PACKING COMPANY, Appellee.

STATE OF IOWA ex rel. Attorney-General v. ASSOCIATED PACKING COMPANY.

**RECEIVERS: Claims—Quantum Meruit.** A receiver who has neither
1    adopted nor ratified a personal service contract antedating the receivership is not bound to pay the contract compensation. Record reviewed, and held to preclude complaint as to the amount allowed as *quantum meruit.*

**RECEIVERS: Management of Property—Existing Contracts.** Principle
2    reaffirmed that a receiver is not bound to carry out the terms of an executory contract entered into by the debtor.

**APPEAL AND ERROR: Review—Following Trial Theory.** A litigant
3    who presents his cause in the trial court on the theory that the contract sued on is executory may not change front on appeal and have a review on the theory that the contract has been fully executed.

*Appeal from Polk District Court.*—JAMES C. HUME, Judge.

MARCH 6, 1923.

REHEARING DENIED JUNE 22, 1923.

THIS is an appeal from an order of the court refusing to allow a portion of the claim of J. A. Priestly Engineering & Construction Company against J. A. Cavanagh, as receiver of the Associated Packing Company. The material facts will be found fully stated in the opinion.—*Affirmed.*

*Nourse & Nourse,* for appellant.

*Thomas J. Guthrie* and *Charles Hutchinson,* for appellee.

STEVENS, J.—Claimant, on April 23, 1919, entered into a contract in writing with the Associated Packing Company, a corporation organized under the laws of this state, by which said claimant agreed to perform services therefor as architect and engineer. The services to be rendered are specifically set forth in the contract as follows:

1. RECEIVERS:
   claims: *quantum meruit.*

"The first party hereby appoints and employs the J. A. Priestly Engineering and Construction Company, the second party, as its exclusive architect and engineer to supervise, engineer, and construct to completion all packing houses and other buildings and works connected with and a part of the first party's plant, which the first party proposes to erect in the city of Des Moines, Polk County, Iowa. Said second party is to supervise and prepare and execute all necessary drawings, working plans, details and specifications; the second party shall also supervise the purchasing of all material, equipment, tools and appliances, hire all labor and shall supervise the erection and construction of all buildings and all work and the installation of all material and equipment of all kinds. The second party shall supervise the letting of all subcontracts for any special line of construction or installation of equipment which can be advantageously handled in that manner, and second party agrees to perform said services and see that all work is performed in good substantial and workmanlike manner and in so far as the funds, furnished by the party of the first part will permit, build a complete packing plant and its kindred industries, fully equipped and ready to operate."

The contract further provided that the plans and specifications should be worked out in conjunction with R. H. Frisby, president and general manager of the corporation. Claimant was a resident of Kansas City at the time the contract was executed, but moved to Des Moines and entered upon the performance thereof May 1, 1919, occupying offices supplied by the packing company, fully equipped with all necessary assistants. Priestly continued to perform services under the contract for a period of 47 weeks. The contract provided for compensation in the form of a commission equal to 7½ per cent of the total cost of the work, the same to include the cost of all material, labor, appliances, and equipment necessary for the construction and equipment of a completed packing plant, the same to be paid, $100 per week, and 75 per cent of all earned commissions, based on cost of material and equipment on the ground and all labor performed monthly. A temporary receiver was appointed for the Associated Packing Company on February 7, 1920, and a permanent receiver on March 16, 1920. On October 22, 1920, a

decree was filed in an action brought by the attorney-general in the name of the state against the packing company, in which the court found that the company was organized in bad faith and for the purpose of reaping promotion profits only, and that it obtained its charter by fraud practiced upon the state, and ordered the same annulled and revoked, and that its affairs be administered and wound up by the receiver.

Claimant, on April 9, 1920, filed a mechanics' lien in the office of the clerk of the district court of Polk County, claiming a balance due him, after crediting weekly payments in the sum of $4,700, of $10,287.11, and later filed a like claim with the receiver. Allowance of the claim was resisted by the receiver, upon the grounds that the claimant had been fully paid for his services; that he knew of the fraud practiced by the company upon its stockholders, and therefore was entitled to no compensation; and that he was never legally employed by the company. The court allowed him $6,120 upon which the weekly payments were credited, leaving a balance of $1,420. Judgment was entered for this amount, which was made a lien upon the real property of the packing company, and foreclosure decreed. The court below filed a written opinion, in which the finding was made that Priestly had knowledge of the fraudulent character of the corporate organization, and that the compensation provided for in the contract was unreasonable and unconscionable. The claim was upon the theory of a *quantum meruit*. The compensation asked by claimant is a sum equal to $7\frac{1}{2}$ per cent of the total cost of labor and materials and appliances actually used upon the premises.

The record shows that Frisby and his associates, professedly at least, contemplated the erection of a plant to cost from two to two and one-half million dollars—possibly more. The scheme appears to have never passed beyond the early promotion period. None of the main buildings were ever erected. An ice house was substantially completed, and some other small buildings were partially completed, and some machinery and other equipment installed. Drawings, more or less fragmentary and incomplete, of the foundation, floor plans, with some details and elevations, were prepared by claimant, or by others under his supervision. These drawings necessarily consumed considerable time and la-

bor. It is probable that claimant was not wholly to blame for his failure to complete the drawings and details. No one connected with the project was, apparently, ever able to determine whether a sufficient amount could be realized from the sale of stock to complete the plant. Claimant inspected various packing plants at Kansas City, Omaha, Sioux City, and other places, planned and superintended the construction of an ice house, wrecked some old buildings that were on the site, salvaged the material, put in part of the foundation for the plant, built a cement storage house, reconstructed a building for repair sheds, remodeled an old factory building, tested the plant site for foundations, cleaned out lakes situated thereon, repaired dams, made concrete spillways, and helped put up the ice, in addition to making the drawings referred to. The only specifications prepared by claimant were for the ice plant. During the time he was engaged by the Associated Packing Company, he was also employed by the Union Stockyards Company, an allied corporation, for which employment, we learn from the opinion of the court below, he was paid $4,200.

As already appears from the foregoing statement, appellant claims compensation on the basis of 7½ per cent of the total cost of labor and material actually expended and placed upon the site of the proposed plant. It is well settled that a receiver is not bound to carry out the terms of an executory contract entered into by the debtor. *Worthington v. Oak & Highland Park Imp. Co.,* 100 Iowa 39; *Griffith v. Blackwater B. & L. Co.,* 46 W. Va. 56 (33 S. E. 125); *Gaither v. Stockbridge,* 67 Md. 222 (9 Atl. 632); *United States v. Union Pacific R. Co.,* 8 Otto (U. S.) 569 (25 L. Ed. 143); *Farrell v. United States,* 99 U. S. 221 (25 L. Ed. 321); *United States Trust Co. v. Wabash Western Railway,* 150 U. S. 287 (37 L. Ed. 1085); *Chemical Nat. Bank v. Hartford Deposit Co.,* 161 U. S. 1 (40 L. Ed. 595); *Weeks v. Cornwell,* 44 Hun (N. Y.) 629 (13 N. E. 96); *Mueller v. Stinesville & Bloomington Stone Co.,* 154 Ind. 230 (56 N. E. 222); *Strebel v. Bligh,* 183 Ind. 537 (109 N. E. 45); *Wells v. Hartford Manilla Co.,* 76 Conn. 27 (55 Atl. 599); *Law v. Waldron,* 230 Pa. St. 458 (1912 A Ann. Cas. 467); *Wolf v. National Bank of Illinois,* 178 Ill. 85 (52 N. E. 896); Tardy's Smith on Receivers (2d Ed.), Sec-

2. RECEIVERS: management of property: existing contracts.

tion 35 *et seq.* So far, at least, as the contract in question was not performed, it was executory. A contract becomes executed only when it has been performed according to its terms. Until this has been accomplished, it is executory. *Leadbetter v. Hawley,* 59 Ore. 422 (117 Pac. 289, 505).

The question in this case is not, however, whether the receiver is bound to carry out the terms of the contract. No one is asking for that. The sole question is: Shall claimant be allowed a sum equal to 7½ per cent (less the weekly payments) of the total cost of the labor expended and material used in the construction and partial construction of the buildings upon the site of the proposed plant, or is his recovery to be based upon the reasonable value of the services rendered?

It is argued by claimant that the contract was fully executed, according to its terms. Evidently, this argument is based upon the following provision thereof:

"It is further agreed in the event first party fails to finance building of said packing house plant and work herein contemplated and is unable to build same, then all plans and specifications and all copies thereof prepared by second party as herein provided shall be the exclusive property of second party and shall not at any time be used by the first party, its successors or assigns for any purpose and party of the first part shall pay to second party for services rendered in preparing said plans and specifications and the supervising of any construction work a sum equal to all advancements and payments made to second party during the time said second party is engaged in making said plans and specifications and the supervising of any construction work."

3. APPEAL AND ERROR: review: following trial theory.

Appellee's construction of this provision of the contract would limit claimant's compensation to the amount actually received from the company. If this construction were adopted, no further compensation could be allowed. This paragraph of the contract was evidently executed for the protection of the packing company, and must be construed as a limitation upon the commissions which Priestly could claim under the contract if the project failed to be carried out because of inability on the part of those in charge to finance it, which commissions could not exceed 75 per cent of 7½ per cent of the total cost of the

labor and material used upon the premises, the $100 weekly payments to be deducted therefrom. The claim for a mechanics' lien filed with the clerk, and also the claim filed with the receiver, are, apparently, based upon the theory that the contract was still in force, as the full compensation is demanded. Whether claimant could have elected to terminate the contract upon the ground that the promoters had failed to finance the project, and could have demanded payment upon the theory that he was entitled to three fourths of the commissions earned, we need not determine. The question is not before us. Claimant, having elected to treat the contract as still in force, cannot recover upon the theory that it was fully executed, but he must take what he is entitled to under the contract as an executory one. Appellee did not plead the actual termination of the contract but submitted the case below and in this court upon the theory that the contract was an executory one. Furthermore, the record does not show that the promoters of the packing company were, in fact, unable to finance it, although they may have failed to do so. On the contrary, the court, in its decree filed October 22, 1920, found that the scheme was conceived and prosecuted in fraud, and for the purpose of promotion profits only.

The court below found in this proceeding that claimant was fully conversant with the whole scheme, "of which he was a beneficiary," and with its "manifold implications." This finding is not based upon any direct evidence in the record. It must be confessed, however, that it requires some credulity for the court to believe that the close and intimate association of Priestly with Frisby and other promoters of the enterprise for ten months did not result in more or less complete information on his part as to its fraudulent character, if he was not otherwise familiar therewith.

The record affords no satisfactory evidence upon which to base a finding as to the amount which claimant should be allowed. But a trifle over $200,000 was expended in labor and material upon the premises. The value of the improvements erected is manifestly much less than it would have been if the plant had been completed and operated. The drawings and plans made of the building and premises are, as stated, fragmentary and incomplete, and a great amount of time and labor

must yet have been expended on them before the buildings could have been erected. If claimant entered into the contract in good faith, as he claims, his compensation must have been fixed upon the theory of a completed plant. The compensation agreed upon was for the services as a whole.

The receiver has not adopted or ratified the contract, and is not, therefore, bound to pay the compensation named in the contract. Claimant should, upon the theory that he acted in good faith, be allowed, in addition to the sums already paid him, an amount that will compensate him for the fair and reasonable value of his services. The case below having been tried upon the theory that he was entitled to recover $7\frac{1}{2}$ per cent of the total cost of the labor and material used upon the premises, no satisfactory evidence as to the reasonable value of his services was introduced. Two witnesses testified that they, at about the same time, paid an architect and superintendent a commission of 15 per cent for the preparation of plans and the superintending of the construction of two large hotels in the city of Des Moines. As opposed to this evidence, the testimony of a witness by the name of Miller was read from a transcript to the effect that 3 per cent would have been the limit of compensation. The court below allowed claimant at the rate of $24 per day, or $612 per month. This allowance was not based upon any affirmative evidence in the case; but, as the Associated Packing Company has not appealed, it must stand.

We deem it but fair to all concerned to say that, in our opinion, the amount allowed upon the theory most favorable to claimant does him substantial justice. It follows that the judgment of the court below must be and is—*Affirmed*.

PRESTON, C. J., WEAVER and DE GRAFF, JJ., concur.