EDWARD J. BREEN, JR., Appellant, v. CENTRAL IOWA POWER & LIGHT COMPANY, Appellee.
No. 39275.

1162

April 2, 1929.

*J. C. Campbell* and *Maurice J. Breen*, for appellant.

*Price & Burnquist* and *R. W. Zastrow*, for appellee.

GRIMM, J.—The defendant is a corporation engaged in the manufacture, sale, and distribution of electric current in northern Iowa, having, among others, an office in Charles City, Iowa, in the territory known as the ''Cedar Valley Division'' of said defendant company's territory. In the year 1925, the plaintiff was working for the said defendant, in the securities department, assisting in the sale of stock in the corporation. There is some conflict in the evidence as to what his real position was, but it appears that, generally speaking, it was his duty to assist various employees of the corporation in selling stock of the company, the sales, however, not being made in the name of the plaintiff, but credited to some particular employee instrumental in procuring the sale. The plaintiff was living and located at Humboldt, Iowa, at this time, and employed on a salary. In September, 1925, the question of removing the plaintiff from Humboldt to Charles City arose, it appearing that Charles City was more centrally located for the territory covered by the plaintiff. The plaintiff refused to remove to Charles City unless he could have an increase in compensation and a definite understanding with reference to his future employment. This matter was taken up with one Sterns, then vice president and general manager of the defendant company. The plaintiff claims that, sometime in October, 1925, he entered into a definite oral agreement with the said company, through Sterns, by the terms of which (broadly speaking) the plaintiff was to remove to Charles

City and continue his work from that point, but at a salary increased to $175 a month, and for a period of not less than one year, and in addition to the salary, that a certain bonus and commissions were to be paid; that, at the time of the making of this oral agreement, the bonus and commission were not definitely worked out, because Sterns did not have sufficient data at hand, but Sterns agreed to have an investigation made, and subsequently advise the plaintiff as to the amount of bonus and commission. On the basis of this oral agreement, the plaintiff moved his family to Charles City, rented a house for a year, and continued his work for the defendant. On December 1, 1925, Sterns wrote plaintiff a letter, as follows:

"Central Iowa Power & Light Company
"General Office,
"Humboldt, Iowa.

"Office of                                          Central Division Offices
"D. M. Sterns                                                    Waterloo
"Vice-President                                              Charles City
"and General Manager                                           Humboldt
                                              "December 1, 1925

"Mr. Edward J. Breen
"Central Iowa Power and Light Co.,
"Charles City, Iowa.
"Dear Sir:

"I have been checking over the Preferred Stock Sales for the past ten months with a view of arriving at some basis for a bonus proposition for you, which I told you sometime ago I would prepare. I realize that stock sales of the Cedar Valley Division have been a little slow this year due to the fact that the stock was new in that territory and for that reason the sales of 1925 could not be used as a basis for a bonus proposition. I figure that on your present salary basis you should sell on an average of $12,000 worth of stock each month during the coming year. If you reach the amount of $144,000 during the calendar year of 1926, you will receive, in addition to your present salary of $175.00 per month, a bonus of $500.00. On all sales in excess of $144,000 during that period you will receive a commission of one dollar per share.

"In preparing this proposition I have tried to take everything into consideration and hope that you are pleased with it.

"I understand you are nicely located in Charles City and you are much pleased with the change. Wish you success in your work during the coming year and with kindest personal regards, I am

"Yours very truly,

"D. M. Sterns

"DMS-W-P                    Vice Pres. & Gen'l Manager"

The plaintiff had been receiving his increased salary of $175 per month from about October 1, 1925. After the receipt of Exhibit A (the letter above quoted), he continued his work for the company at Charles City. He began a stock-sales campaign for the month of January. It appears that a series of stock-selling campaigns had been arranged for by the management of the company, the first to be in January, 1926, the second in March, one from June 1st until July 15th, and another for a number of weeks previous to the 10th of November. The record shows that in 1926 sales of stock were made in the Cedar Valley Division amounting in January to $42,000, in February, $10,600, and in March, up to March 10th, $10,600. The company discontinued the sale of stock on the 10th of March, 1926. There is evidence in the record to show that the reason given for this discontinuance of the sale of stock was because, on account of some rearrangement of plans, the books of the company were to be removed from Philadelphia to Fort Dodge, and that the suspension of sales was only temporary, and that the sales probably would be renewed about May 1st. Later, it appeared that the sale of stock was to be discontinued for an indefinite period. In the meantime, there is evidence to show that the company undertook to transfer the plaintiff from the stock-sales department to the department in charge of the sale of merchandise, such as vacuum cleaners, washing machines, and similar merchandise. The defendant ceased paying the plaintiff his salary about the 1st of May, 1926, and the plaintiff sought and obtained other employment.

While the plaintiff was in the service of the defendant, he bought certain merchandise on credit, amounting to approximately $80. After the plaintiff ceased working for the defendant and sought other employment, he asked the defendant for a recommendation. This was refused until and unless the plain-

tiff would pay this merchandise bill. The plaintiff gave a note for $60 and a check for the balance. This note was still in the hands of the defendant company and unpaid at the time of the trial of this case. The defendant filed an amendment to its answer, setting up the facts in reference to this bill of goods and the delivery of the note and check, and alleged that by reason thereof the plaintiff was barred and estopped from making his claim for damages for alleged breach of contract; and, by a separate division, as a counterclaim, asked for judgment for the amount of the note. At the close of all the evidence, the defendant filed a motion for a directed verdict, containing six grounds. The motion was sustained. Near the close of the remarks of the court in ruling on the motion, the court said:

"There is another matter that isn't in the motion. There is some question as to whether there wasn't a settlement by the payment of the bill without making any claim against the company."

Defendant's counsel then said:

"I would like permission of the court to add to that motion for judgment on the note here. That is in the counterclaim. The note has been admitted."

The court then ruled:

"The motion is sustained, and the jury is directed to find a verdict for the defendant in the sum of $60."

I. The lower court did not rule as to whether the giving of the check and note by the plaintiff constituted an estoppel as against the claim in suit, and the question is not before us.

II. The first, fifth, and sixth grounds of the motion will be treated together. In substance, they raise the issue that the plaintiff failed to prove any contract for any definite term or for any definite period, and that, if a verdict were returned upon the record, it must necessarily be set aside by the court.

Sterns was not a witness on the trial, and no one was present when the conversation between the plaintiff and Sterns took place. The plaintiff is uncontradicted as to his testimony on the

 subject of an oral contract, except as some discrepancies arose between his testimony in chief and on cross-examination. The plaintiff testified, in chief, that his agreement with Sterns was that, if the plaintiff would go to Charles City at a salary of $175 per month and a bonus and commissions to be arranged later, he would be assured of at least a year's work in Charles City. The plaintiff testified that he had refused to go to Charles City until some definite tenure of position should be procured, and until a change of salary had been arranged for. The salary increase was granted him, and the letter Exhibit A, sent by Sterns to the plaintiff sometime after the oral contract was said to have been made, sets forth the terms of the bonus and commission. It will be noted that the plaintiff had, prior to the date of Exhibit A, moved to Charles City, and he had been receiving the increased salary for a few months. The letter of December 1st (Exhibit A) was a statement of terms regarding bonus and commission finally fixed by Sterns in accordance with the oral agreement previously made. Plaintiff's evidence on the subject of the oral contract is not contradicted. The defendant claims that there is a failure to prove a contract for a definite term or period. The plaintiff testified he was promised employment for at least a year, and this was not contradicted.

It is undenied in the record that, immediately after the time of the making of the oral contract, as is claimed by the plaintiff, the plaintiff's salary was increased to $175 per month.  The plaintiff moved to Charles City, as he was required in accordance with the oral contract, and continued in the service of the defendant company, assisting in the sale of stock. It is claimed by the defendant that there was no acceptance of the portion of the contract contained in Exhibit A. The rule is well established that acceptance may be by conduct. *Hankins v. Young*, 174 Iowa 383. Upon the entire record, we find that the trial court was in error in holding that no contract was shown to have been made by the parties.

III. By the third ground of the motion for directed verdict, the defendant raises the point that there was no competent evidence offered on the trial showing any damage to the plain-

tiff, and that the claimed damages were purely speculative in character. It will be noted that plaintiff's compensation consisted: (a) of a salary of $175 a month; (b) if the plaintiff sold $144,000 par value of securities during the year 1926, he was to receive a bonus of $500; (c) he was to receive, on all sales in excess of $144,000, a commission of $1.00 per share. If the defendant breached the contract, one of the elements of plaintiff's damages was his loss of salary. It was a fixed sum.

As was said in *Bertholf v. Fisk*, 182 Iowa 1308, Justice Evans speaking for the court:

"Disregarding, for a moment, the fact that the plaintiff had paid $500 as a consideration for his employment for a term of six months, and looking at the case as an ordinary one of employment for a fixed term, and a wrongful discharge, the prima-facie measure of damages in favor of the discharged employee is his contract wage for the unexpired term, less what he actually earned during such unexpired period, in whatever occupation, or what he might have earned with reasonable diligence in other employment of the same general nature. It is the privilege of the defendant to show such earnings, actual or reasonably possible, in reduction or mitigation of damages."

The court quotes with approval from a New York case on the same subject. The plaintiff, Breen, made out a prima-facie case of damages, so far as his loss of salary was concerned. It was incumbent upon the defendant to show facts in reduction of such damages, if any.

IV. The second and fourth grounds of the motion for a directed verdict pertain to a change of occupation. After the sale of stock was discontinued by the defendant company, the plaintiff was offered a position in the merchandise department of the company, selling merchandise, such as vacuum cleaners and washing machines, from door to door. There is some dispute in the record as to whether the plaintiff was actually discharged by the defendant because he refused to engage in peddling such merchandise, or whether he accepted the ultimatum and resigned, rather than engage in this latter work. In our

view of the case, it is immaterial which happened. There is such a marked difference between assisting in or supervising the sale of securities, and the peddling of merchandise, as to warrant the employee in considering his contract for the supervision or sale of securities breached. *Cooper v. Stronge & Warner Co.*, 111 Minn. 177 (126 N. W. 541, note, 27 L. R. A. [N. S.] 1011).

We have given careful consideration to all other questions presented by counsel for the defendant, but we deem a discussion of them unnecessary. For the errors pointed out, the case is—
*Reversed.*

ALBERT, C. J., and EVANS, STEVENS, and KINDIG, JJ., concur.

FAVILLE, J., takes no part.