## JONES v. CLARK et al.
### No. 8430.

Court of Civil Appeals of Texas. San Antonio.
May 14, 1930.

Rehearing Granted July 12, 1930.

See also (Civ. App.) 292 S. W. 585; (Civ. App.) 13 S.W.(2d) 954.

578

Decker, Foster & Allen, of Raymondville, for appellant.

R. F. Robinson and A. B. Crane, both of Raymondville, for appellees.

COBBS, J.

Appellant, in 1925, undertook to purchase from appellee Clark a tract of land situated in Willacy county, Tex., for $3,000 in cash, and the assumption of a certain debt against the land. The papers in connection with the transaction were deposited in the First State Bank of Lyford, Tex. Jones, during January, 1926, attempted to close the deal, and sought to make the cash payment of $3,000 by draft drawn against his account with the People's Bank in Ozark, Ark. Jones delivered said draft, with deed attached, to the Lyford bank, which accepted it for collection. The Lyford bank forwarded the draft to the City National Bank of San Antonio, Tex., which, in turn, sent same direct to the People's Bank of Ozark, Ark., and that bank upon its receipt of the draft issued its own cashier's check therefor and sent it to the City National Bank of San Antonio, which in turn sent it to the Lyford bank.

Appellees answered with a general denial, general demurrer, and many special exceptions, etc., and specially answered that appellant drew this draft for $3,000 and attached a deed to one-half interest to F. G. Stockton, the cashier of the Ozark bank. That as the draft had a paper attached the Federal Reserve Bank would not handle it. That on the 16th of January, 1926, Stockton, for the Ozark bank, issued a cashier's check for the draft in the sum of $3,000. The San Antonio bank had instructed the Ozark bank to send the proceeds to Dallas, but the Ozark bank violated the instructions and sent it to the San Antonio bank, which bank returned the check to the Ozark bank, through the Federal Reserve Bank, but when it got to Little Rock, Ark., the Ozark bank had failed on account of insolvency; and further pleaded fraud, etc. The answers of the defendants were practically the same.

The case was tried without a jury and the court rendered judgment for appellees.

This case presents its second appeal, having been before this court in 13 S.W.(2d) 954, when it was reversed and remanded.

We do not think there is any merit in appellant's first proposition, complaining of the action of the court in refusing to allow Jones to testify that he had money in the bank to pay his draft. When one draws and delivers a check on a bank for money, in the absence of proof that he had no fund subject to his check, the legal presumption, or inference, is that he had such fund, since the bank accepted the draft and issued and delivered its certified check for the face of the check.

There was no evidence introduced apparent in the record that the cashier's check has been tendered in this case, except the judgment of the trial court found "that defendant bank tendered into court the cashier's check in question, and that there has never been any demand for the said check."

The chief negligence we can see in this case was the negligence on the part of the Ozark bank in sending its certified check in payment of the draft for $3,000 in the manner stated, and who was responsible for that? Was the San Antonio bank guilty of want of ordinary care and prudence in sending a draft payable to the payee when there was another bank in the same city? If the draft had been sent to the other bank, it would no doubt have been collected, but through the want of care on the part of the San Antonio bank an opportunity was given the Ozark bank to do the very thing it did do.

We do not here discuss the facts of this case, since they are practically the same as stated in our former opinion, to which reference is made.

While the apparent negligence committed was by the City National Bank in sending for collection the check to the payee therein, we cannot enter judgment herein against it because it is not a party to this suit. We can charge its negligence against appellee as it was its agent. We know of no decision or rule of law that would justify the manner in which this collection was handled.

As this case has been tried before, we believe it has been developed all it can be, and therefore reverse the judgment and here render judgment in favor of the appellant for the sum of $3,000, the amount of the draft, and $200 forfeit money provided in the contract, with lawful interest from date of the institution of suit; that is to say, for $3,200 from February 5, 1926.

Reversed and rendered.

On Motion for Rehearing.

SMITH, J.

We conclude upon rehearing that the judgment of the trial court must be affirmed. The case now presented is quite different from that presented in the former appeal, in that the evidence in the record now before us is full as to all phases of the case, while in the former record the evidence was quite too meager and unsatisfactory to support the judgment, which was reversed upon that account. The case is one largely of fact, and was disposed of in the court below upon issues raised by conflicting evidence.

Appellant's case rests upon the contention that appellee the Lyford bank undertook to collect a draft upon a bank in Arkansas, and negligently failed to perform that undertaking, or to account for a cashier's check given

by the Arkansas bank in settlement of the draft. The record shows that the Lyford bank forwarded the draft for collection through its regular correspondent, the City National Bank of San Antonio, which in turn forwarded it direct to the bank in Arkansas upon which it was drawn. The latter issued its cashier's check in payment of the draft, and forwarded it to the San Antonio bank, which thereupon returned it to the issuing bank for payment. It was never paid for the reason that the issuing bank failed before its cashier's check was presented for payment. The original draft was annexed to a deed in which the drawer conveyed one-half the land involved to one Stockton, cashier of the Arkansas bank. That bank took up the draft by issuing its cashier's check therefor, detached the deed therefrom, and returned it to the forwarding bank with directions to have it recorded in Willacy county, where the land is situated. In the meantime the San Antonio or correspondent bank forwarded the cashier's check to the Arkansas bank with the result stated.

■ It is the settled law of this state that, "when a bank receives negotiable paper to be collected at a distant point, and transmits the same with due diligence and care to a reputable and proper correspondent at or near the place where the collection is to be made, it has discharged its duty, and is not responsible for the negligence of such correspondent, but that such correspondent becomes the agent of the owner of the paper." 6 Tex. Jur. § 148, p. 297; Tillman County Bank v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302, and case note.

■ Under this rule the Lyford bank was not liable in this case for any negligence of the San Antonio bank, conceded by appellant to be a reputable and proper correspondent.

■ Appellant contends that he gave the Lyford bank special instructions concerning the collection, which, if followed by the bank, would have prevented the loss, and that the Lyford bank ignored those instructions and did not communicate them to its correspondent. It is obvious that if such instructions were given the forwarding bank and it failed to transmit them to its correspondent, it would be liable to appellant for any loss resulting from such failure. But in this case the giving of such instructions was sharply denied by witnesses for appellees, thereby raising a clear issue of fact, and the trial court having resolved the issue against appellant, it goes out of the case, since the finding thereon is binding upon this court.

■ Appellant vigorously contends that because the San Antonio bank forwarded the draft direct to the drawee bank, instead of another bank in the same town, the forwarding bank is liable for the consequences of such act. It is true that, in the absence of a stipulation to the contrary, a collecting bank is held to be negligent in sending paper direct to the drawee bank when other channels of collection in that locality are available to it. 6 Tex. Jur. § 147, p. 296; Friends, etc., Soc. v. Peterson (Tex. Civ. App.) 9 S.W.(2d) 1110.

■ But the liability in such case rests upon the bank actually guilty of such negligence, and where, as in this case, it is the act of an intermediate or correspondent bank, the liability will be restricted to that bank, and will not be imputed to the forwarding bank in the absence of specific facts which make it a party to the negligence. In other words, under the general rule, the correspondent bank is not deemed an agent of the forwarding bank, but is the agent of the drawer, to whom it is directly liable; unless, indeed, facts peculiar to a given case create an exception to the general rule, which is not the case here. Upon the foregoing conclusions we overrule appellant's propositions 4 and 5.

■ Appellant devotes much space in his brief to the contention that appellee bank is liable because it has always refused appellant's frequent demands for the dishonored cashier's check in controversy. These contentions are without merit, since appellees' witnesses testified that no such demand for said check had ever been made upon the bank, and the court resolved, against appellant, the issue thus raised; and the judgment recites that the check was tendered to appellant upon the trial, while it is undisputed that the check has never been paid. Appellant challenges this recitation, asserting that there is no evidence of such tender. We conclude, however, that the recitation is conclusive, that the tender was made in open court, as was reflected by the judgment. We overrule appellant's propositions 3 and 6. Appellant's first proposition, complaining of the exclusion of certain evidence, is overruled for the reason that the said ruling, even if erroneous, could not possibly have injured appellant.

Appellant contends in his propositions 2 and 7 that he had not forfeited, but had performed, his contract with appellee Clark to purchase the land involved from the latter. The record conclusively shows, however, that regardless of the merits of the controversy between him and the bank, appellant did not pay Clark the $3,000 cash required of him in said contract, or tender it until long after the option therefor had expired, and for this reason, if no other, the contract was forfeited under its express terms. We overrule appellant's propositions 2 and 7.

■ The case is really one of fact, the issues of which have been resolved by the trial court against appellant, upon conflicting tes-

timony. This court is bound by the trial court's findings in such cases.

In his motion for rehearing appellant raises a number of questions not presented in his brief. He is limited in this appeal, however, to the propositions and assignments set up in his brief, and the additional questions presented in his motion for rehearing, even if meritorious, could not be considered.

Appellees' motion for rehearing is granted, the judgment of reversal and rendition heretofore rendered by this court will be set aside, and the judgment of the trial court affirmed.

FLY, C. J.

I concur in the foregoing opinion of Associate Justice SMITH.

COBBS, J. (dissenting).

In this case Associate Justice SMITH has found it difficult to accept the view of Associate Justice COBBS in the disposition thereof and filed a separate opinion in which Chief Justice FLY will perhaps agree. Justice SMITH agrees with the writer that the negligence and want of care in handling this collection, as shown in the opinion, was with the City National Bank of San Antonio in forwarding the check to the payee bank itself when there was another reputable bank in the city where the payee bank resided. Other irregularities were committed in the handling of the collection, and it is to be presumed that another bank would have promptly collected it and saved appellant from his loss and damages. Now all being agreed that the improper sending of the check to the payee bank caused the damage, brings us to the consideration of the question as to the liability of any one and who.

Justice SMITH places his opinion on the case of Tillman County Bank v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302, in which an able opinion for the Supreme Court was written by Mr. Justice Pierson. This case in many respects is similar to the case under discussion, but may be differentiated in its discussion and findings of fact in reference to diligence. The facts in that case are:

"On June 1, 1920, Dell Behringer delivered to the Tillman County Bank a cashier's check issued by the Thrift-Waggoner Bank, of Thrift, Wichita county, Tex., in his favor for the sum of $3,150. The Tillman County Bank credited Behringer with the amount of the check, and he drew $400 out of the account. The Tillman County Bank immediately sent the check as a cash item to its correspondent, the City National Bank of Commerce of Wichita Falls, Tex. This was its customary way of collecting items drawn on the banks in the vicinity of Wichita Falls, Tex. Nothing was said by Behringer to the Tillman County Bank in regard to the manner or method of collecting this check, and no instructions were given in reference thereto. The Wichita Falls bank promptly notified the Tillman County Bank of the receipt of the check and credit of same to its account. The Thrift-Waggoner Bank was located at Thrift, Tex., a small town off the railroad, about 20 miles from Wichita Falls. There was another bank, Johnson Bros. Bank, located at this place. On June 3d, promptly after receipt of the check, the Wichita Falls bank sent it by mail as a cash item to the Thrift-Waggoner Bank, with instructions to remit in payment. The bank cashier testified that this was its customary way of handling such items. Receiving no report from the Thrift-Waggoner Bank, the Wichita Falls bank sent out successive inquiries about June 8th and June 11th, but received no response. It had been having trouble for some time before this transaction in securing remittances from the Thrift-Waggoner Bank on items sent it. At one time it had been clearing such items through the First National Bank of Burkburnett, but such bank refused to handle such collections further because of the trouble in securing returns from the Thrift-Waggoner Bank. On June 16th the Wichita Falls bank sent an agent to Thrift, and collected some $3,000 'to apply on some of its items,' but the plaintiff's check was not included in the amount thus collected. If the check had been presented and payment demanded 'over the counter' at any time prior to the evening of June 16th, it would have been paid. The Thrift-Waggoner Bank failed on June 16th, without ever having remitted in payment of plaintiff's check, which it had received and retained. The Wichita Falls bank thereupon charged the amount of the check back to its account with the Tillman County Bank, and notified such bank of the facts. This was the first notice the Tillman County Bank had that the check had not been paid. This bank in turn charged the plaintiff's account with the amount of the check, and demanded payment of the $400 required to cover the deficiency.

"It is conceded that there are only two questions for decision on this appeal: First, whether the Wichita Falls bank was the agent of the Tillman County Bank, or of the plaintiff (Dell Behringer); second, whether the facts support a finding that the Wichita Falls bank was negligent in the matter of the collection of the check."

It is conceded that the City National Bank of San Antonio was under no obligation to collect the check, but it was under legal as well as moral obligation to use due diligence for its collection and due care in the selection of an agency for the purpose. I agree with Chief Justice Phillips in his statement in Waggoner Bank & Trust Co. v. Gamer, 113 Tex. 5, 213 S. W. 927, that the correspondent

bank was not guilty of negligence in sending a check for collection direct. to the drawee bank, for the reason that it was the only bank in the city; but in this case there were two banks in the city, besides there was a deed attached for the president of the bank, to be delivered upon the payment of money, and which should not be delivered otherwise.

Judge Pierson in his opinion, supra, cites a number of cases and says: "There is much conflict over this question. *The New York Rule* is that the correspondent bank to which commercial paper has been sent by a forwarding bank is the agent of the forwarding bank, and that the forwarding bank is liable to the depositor for the negligence of its correspondent. Allen v. Merchants' Bank, 22 Wend. (N. Y.) 215, 34 Am. Dec. 289. . *The Massachusetts Rule* is that, when a bank receives negotiable paper to be collected at a distant point, and transmits the same with due diligence and care to a reputable and proper correspondent at or near the place where the collection is to be made, it has discharged its duty, and is not responsible for the negligence of such correspondent, but that such correspondent becomes the agent of the owner of the paper. Dorchester & Milton Bank v. New England Bank, 1 Cush. (Mass.) 177."

Judge Pierson, in his opinion, further says:

"Notwithstanding the fact that the New York Rule is supported by such excellent authority and by the courts of a number of the states of the Union, yet it must be recognized that the prevailing rule, and, as we think, the more reasonable and just construction of the contract of the parties and of the undertaking of the first bank, is that, when paper is payable at another and distant place, said bank discharges itself of liability by transmitting the same with due diligence to a suitable and reputable bank at or near the place of payment.

"The confusion in the authorities, it seems to us, arises from an erroneous premise of assuming that the agreement of the parties and the undertaking of the receiving bank was to itself effect a collection of the paper, rather than the receiving of said paper for the purpose of forwarding same with due care and diligence to a proper correspondent more accessible to the place of payment, so that it may be presented and paid.

"Under the New York Rule and the courts that follow it, and under the application of that rule by the Supreme Court of the United States, the undertaking of the receiving bank is an undertaking 'to do the business,' to collect the paper: 'to do this thing, not merely to procure it to be done.' It would necessarily follow from such a holding that the bank at a distance to which the paper is forwarded is the subagent of the forwarding bank, to perform a part of that which it had contracted to do. Therefore the courts which follow that construction of the undertaking or contract between the owner of the paper and the forwarding bank necessarily hold that that bank is the agent of the owner to the full extent of effecting collection, and is liable to such owner for any negligence or misconduct of the correspondent bank. This we think assumes the very question that is to be decided. The real issue is: What is the undertaking of the parties?"

The person leaving the paper for collection knows it has to be forwarded to a distant bank for collection and presumes that it will be sent with due diligence to a competent agent to do what shall be necessary in the premises.

Judge Pierson has well said:

"Here the very heart of the undertaking is that the receiving bank will select for the depositor a competent agent for him, and will with dispatch forward the paper to that agent for collection. Too, the collecting bank is equally aware that it has for collection the owner's paper and accepts the duty of that service for the benefit of and on account of said owner. Under the system of banking we think there is no lack of privity between the collecting bank and the owner of the paper.

"We cannot see that this application of the contract of the parties violates, endangers, or abrogates the rule of law relating to the responsibility of the principal for the acts of his agent, as contended by the New York courts and as presented by the Supreme Court of the United States. It is, we think, only a proper construction of the contract or agreement the parties have entered into.

"It may be conceded also that the depositor had no part in the selection of the collecting agent, or in the collection, but the selection of such agent for him is what he has intrusted to the receiving bank, and that, together with the care required in such selection, and in regard to the further attention required of it in the matter, measures its duty and liability.

"The depositor knows that the receiving bank will not personally and through its own agents and servants collect the paper, but knows that it necessarily will transmit it to a distant place. This knowledge of the course to be taken, it seems to us, implies an understanding that the undertaking of the bank is, in good faith and with due discretion, to choose an agent for the depositor."

We think Justice SMITH is in error in thinking the case of Tillman County Bank v. Behringer, supra, is authority for his holding. The holding is directly in support of the theory that when the check is transmitted with due diligence and care to a reputable and proper correspondent at or near the place where the collection is to be made it has discharged its duty. Not so in this case, there

582

is not a single issue of care shown. It was a careless neglect of duty to send the check for payment with the attached draft to the payee named and the deed to the grantee therein, the president of the bank. We think the very cases cited by Mr. Justice SMITH constitute a holding against his views.

The great thing to be accomplished at last in all cases is to see that a case has been fairly tried and justice administered. That would not be the case should we adopt the views of Justice SMITH. Let us come right down to the issue. The draft was placed in the hands of the Lyford bank; and when it was accepted by that bank there arose, by implication at least, a promise and agreement that it would promptly and properly present the draft for payment, and "select for the depositor a competent agent and with dispatch forward the paper to that agent for collection." This was not done. The receiving bank had no business to select the City National Bank of San Antonio, but should have forwarded the papers direct to some bank in the city of the drawee.

By selecting the City Bank to do the sending for it, instead of performing that duty itself, the Lyford bank made the City Bank its agent, and thereby it became liable to the maker of the draft for such breach of duty.

I adhere to my original opinion and think the case should be reversed and remanded. While in the judgment of the court there is a recital that the "Bank tendered into court the cashier's check in question, and that there has never been any demand on it for said check," we suppose the court refers to the cashier's check, for the draft was surrendered and the cashier's check was delivered in lieu thereof.

A careful examination of the record shows that the court's finding is not supported by any evidence and is challenged by counsel, and that neither the check nor receiver's certificate was ever returned or delivered.

I feel constrained to and do adhere to the original opinion filed herein.