## FIRST NAT. BANK OF FORT WORTH et al. v. HANCOCK et ux.
### No. 4019.

Court of Civil Appeals of Texas. Amarillo.
May 17, 1933.

Rehearing Denied June 7, 1933.

Affirmed in part, reversed and rendered in part, and affirmed as reformed.

Coombes & Andrews, of Stamford, for appellant First Nat. Bank of Fort Worth.

Bean & Klett, of Lubbock, for appellant First Nat. Bank of Post.

T. L. Price, of Post, and Lockhart & Brown, of Lubbock, for appellees.

HALL, Chief Justice.

L. P. Hancock and wife, A. A. Hancock, sued Mrs. Francis Adams, Mrs. Olive Rackley, the First National Bank of Post, and the First National Bank of Fort Worth, alleging that on August 15, 1930, they sold certain land in the town of Post to the defendants Adams and Rackley, and as a part of the consideration therefor said defendants agreed to pay $900 cash. In order to make such payment, defendants went to the bank of Post and gave it their check or draft for $900 on the City National Bank of Spur, payable to the Post bank. Mrs. Adams and Mrs. Rackley represented at the time the check was given that Mrs. Adams had on deposit to her credit in the Spur bank a sum of money in excess of $900. That at the request of the Post bank L. P. Hancock, who had sold the lot, indorsed the draft, which was then accepted by the Post bank and sent by direct mail to the Spur bank for collection. The Spur bank received the check August 30, 1930, at which time it was open to the public for business. It accepted the check, marked it "Paid," debited the accounts of Mrs. Adams with the amount, and issued a cashier's check or draft on the First National Bank of Fort Worth, payable to the Post bank, for $900. That at that time the Spur bank had on deposit with the Fort Worth bank, subject to its check, a sum in excess of $900. The draft on the Fort Worth bank was sent by the Spur bank to the Post bank

in the usual course of business, and was received by the last-named bank on the 30th day of August, 1930, after banking hours. August 31st was Sunday, and September 1st was a holiday, but on the 2d of September the Post bank accepted the draft, credited the checking account of Hancock with the sum of $900, and issued him a deposit slip. The Post bank then transmitted the cashier's check to the Fort Worth bank, but, before the receipt of the check by the Fort Worth bank, it learned that the Spur bank had failed to open its doors for business, and it appears that its affairs were placed in the hands of L. B. Withers as receiver. Upon receipt of the cashier's check, the Fort Worth bank refused to pay the sum and returned it to the Post bank with the notation "bank closed," whereupon the Post bank charged the account of L. P. Hancock with said sum of $900.

The substance of these facts is alleged by plaintiffs, and it is further alleged that the method of handling the check by the Post bank made that bank the absolute owner of the check given by Mrs. Adams, and said bank thereby became indebted to plaintiffs in the sum of $900.

In the alternative, plaintiffs alleged that, if the court should hold that the Post bank was their agent, then it was negligent in the manner of handling the draft issued by the Spur bank, and, if the same had been properly handled, plaintiffs would have received their money, and they prayed for judgment against the Post bank in the sum of $900, with interest.

In the second count of their petition plaintiffs alleged in the alternative that, if the court should hold that the Post bank had the legal right to charge the returned draft of the Spur bank to their account, then that the act of the Spur bank in accepting Mrs. Adams' draft and issuing in payment thereof its own draft on the Fort Worth bank constituted an assignment of the funds of the Spur bank then on deposit in the Fort Worth bank to the extent of $900, and the Fort Worth bank became, to that extent, the owner of the fund as trustee for Hancock. Plaintiffs prayed for judgment against both banks jointly and severally in this count.

In the third count plaintiffs prayed for judgment against Mrs. Adams and Mrs. Rackley for the sum of $900 and interest, alleging that said sum had never been paid.

The defendants Mrs. Adams and Mrs. Rackley filed numerous exceptions to plaintiffs' petition, denied the agency of the Post bank, alleged that, if the check given by Mrs. Adams had been promptly presented, it would have been paid, and in the alternative alleged that there was another bank in the town of Spur, viz., the Spur National Bank, and that Hancock and the Post bank failed to exercise due diligence in the method of handling the check given by Mrs. Adams to Hancock, and that, if the same had been properly handled, it would have been promptly paid.

The Post bank answered, alleging that it had followed the custom of the country in the handling of checks and drafts deposited with banks by their customers; that it was requested by plaintiff Hancock and the defendants Mrs. Adams and Mrs. Rackley to prepare the draft drawn in favor of the Spur bank, which was done, and it sent the same to the Spur bank for collection at the request of Hancock and Mrs. Adams and Mrs. Rackley, and was acting purely for their accommodation. It specially pleaded the provisions of the deposit slip which it issued to Hancock, and alleged that, before the draft issued by the Spur bank reached the Fort Worth bank, the former bank was closed, and information to that effect had been received by the Fort Worth bank, which latter bank refused to pay the draft and returned it to the Post bank; that it acted in good faith in following plaintiffs' instructions and was guilty of no negligence; that there would have been no different result if it had sent the check to the Spur National Bank for collection against the City National Bank of Spur.

By way of cross-action against the plaintiffs, the defendants Mrs. Adams and Mrs. Rackley and both the Fort Worth and Post banks alleged substantially the facts as hereinabove set out.

The Post bank further charged that, because Mrs. Adams had more than $900 to her credit in the Spur bank at the time of receiving her check, it constituted an equitable assignment of the funds in the Fort Worth bank in trust for Hancock or was a designation of said funds as a trust, and, since said draft had not been paid, the Fort Worth bank should be held as the trustee to the extent of $900 in favor of Hancock or the Post bank.

The case was tried to the court without a jury. All demurrers and exceptions of both banks were overruled. By its final judgment the court decreed that the plaintiffs and the Post bank take nothing by reason of their suit and cross-action respectively against either Mrs. Adams or Mrs. Rackley, and that Mrs. Adams and Mrs. Rackley recover against plaintiffs and against the Post bank for the title and possession of the land. It was further decreed that Hancock recover against the Post bank the sum of $900, with interest, and that the Post bank also recover against the Fort Worth bank the sum of $900, with interest. Both banks have appealed.

The material findings filed by the court are, in substance, as follows:

(1) August 29, 1930, Hancock and wife sold the lot in question to Mrs. Adams and Mrs. Rackley, for which they agreed to pay $900 in cash.

(2) That on and prior to the 29th day of August, 1930, Mrs. Adams had on deposit in the City National Bank of Spur an amount in excess of $900 subject to her personal check.

(3) That Hancock and Mrs. Rackley went into the First National Bank of Post on August 29th, where she told the cashier she wanted to pay Hancock $900 by a check upon Mrs. Adams' account in the City National Bank of Spur; that the cashier wrote out the check payable to the Post bank, drawn on the Spur bank, which was signed by Mrs. Rackley with authority from Mrs. Adams.

(4) That said check at that time was the property of Hancock, which he indorsed in blank and deposited with the Post bank for collection in the same manner in which he had for several years deposited other checks drawn on out of town banks and had always received deposit slips therefor, but on this occasion no deposit slip was issued and the check in question was deposited for collection. His account was not credited with the amount at that time.

(5) At that time Hancock had no knowledge or notice of any customs or practices between the Post bank and the Spur bank or any other bank with reference to the method of handling checks deposited for collection, and nothing was said and no agreement made between Hancock and the bank with reference to the manner and method in which this particular check should be handled.

(6) At the time in question, and long prior thereto, there were two banks operating in the town of Spur, to wit, the City National Bank and the Spur National Bank, which were located directly across the street from each other.

(7) On the 29th of August the Post bank mailed the check for $900 directly to the City National Bank of Spur, and it was received by said bank on the 30th of August at a time when said bank was open for business. Immediately upon receipt of the check the City National Bank of Spur accepted the same, marked it "Paid," and debited the account of Mrs. Adams with $900, the amount thereof, and immediately issued a draft on the First National Bank of Fort Worth payable to the Post bank in the sum of $900, which was mailed to the Post bank.

(8) "I find that at the time of the making of said draft on the 30th day of August, 1930, and for some thirty days thereafter, the City National Bank of Spur, Texas, had on deposit with the defendant First National Bank of Ft. Worth, Texas, subject to its draft or check and which had not been assigned or transferred to anyone, a sum of money in excess of $900.00."

(9) Said draft was received at Post August 31, 1930, which was Sunday. Monday, September 1st, was a holiday, and the Post bank did not receive the envelope from the post office until Tuesday, September 2d. Upon receipt thereof the Post bank accepted the draft as payment of the check for $900, and credited Hancock's account with that sum. That said bank became the owner of the draft and became indebted to Hancock in the sum of $900. That at said time the Post bank issued and mailed to Hancock a deposit slip for $900.

(10) That, if the Post bank had sent the $900 check to the Spur National Bank for collection, it would have been collected by that bank on the 30th day of August from the City National Bank of Spur, and the act of the Post bank in sending the check to the City National Bank of Spur, the drawee, was negligence on the part of the Post bank.

(11) "I find that the City National Bank of Spur, on the 29th and 30th days of August, had sufficient funds with which to have paid said check in cash and would have paid it in cash if cash had been demanded." That the Post bank was not authorized by Hancock to accept in payment anything but cash or its equivalent, and the failure of the Post bank to require payment thereof in cash or its equivalent was negligence on the part of the Post bank.

(12) On the 2d day of September, 1930, the City National Bank of Spur went into voluntary liquidation, failed to open its doors, and has not been open since said time. October 7th thereafter the affairs of the bank were taken over by L. B. Withers, national bank receiver, who has been administering the affairs since then under the direction of the Comptroller of the Currency of the United States.

(13) On the 2d day of September, 1930, the Fort Worth Bank was notified that the City National Bank of Spur had gone into voluntary liquidation. The Post bank, on September 2, 1930, mailed the draft for $900 drawn in its favor by the Spur bank, directly to the Fort Worth bank for collection. The Fort Worth bank received it on September 3d, and refused to accept the draft, and returned the same to the Post bank unpaid.

(14) August 29, 1930, and continuously until October 1st thereafter, the Spur bank was indebted to the Fort Worth bank on a promissory note greatly in excess of the amount which the Spur bank had on deposit with the Fort Worth bank. That the Spur bank had been borrowing from the Fort Worth bank at intervals and had deposited with the Fort Worth bank as collateral notes of greater face value than the amount it owed the Fort Worth bank under an agreement that, if the Fort Worth bank should so desire, it could at any time credit the indebtedness due it by the Spur bank with the amount which the Spur bank then had on deposit with the Fort Worth bank. That about the 1st of October, being the 28th day after it had received notice

of the failure of the Spur bank, and 27 days after it had refused to pay the $900 draft, the Fort Worth bank did credit the amount owing to it by the Spur bank with the amount of funds which the Spur bank had on deposit with it.

(15) Upon return of the draft from the Fort Worth bank to the Post bank, the latter charged the amount of such draft against Hancock's account, and has at all times since refused to pay plaintiff the $900.

In his conclusions of law the trial court concluded that the Post bank was liable to Hancock upon three grounds: (a) Because the bank was negligent in sending the check in controversy directly to the City National Bank of Spur, the drawee, for collection; (b) because it was negligent in failing to require that the check be paid in cash or its equivalent; and (c) because on the 2d day of September, 1930, it accepted the draft of the City National Bank of Spur, Tex., and became the owner thereof and became indebted to plaintiff in such amount, and was without authority to charge such draft back against the account of plaintiff when the same was returned unpaid by the Fort Worth bank.

■ The Post bank seeks to justify its action upon the ground that the deposit slip which it issued to Hancock at the time it received the check from Hancock and Mrs. Rackley contained stipulations to the effect that items received for collection were at depositor's risk, and might be sent direct to the bank upon which they were drawn or at which payable, and also stipulated that the Post bank and its collecting agent might accept either drafts or cash in payment of such items. This slip was not issued at the time the check was accepted for collection. These stipulations were printed upon the back of the deposit slip which was issued on the 4th of September after the Spur bank had closed its doors and ceased to do business. Hancock did not expressly ratify the stipulations, and, since a deposit slip is not a contract, but is generally considered a receipt, Hancock is clearly not bound by the printed stipulations. It was shown without contradiction that during the period in which the transactions occurred there was another bank in Spur known as the Spur National Bank, situated directly across the street from the City National Bank, and that both banks were accustomed to clear their transactions every day about 11 o'clock. As shown above, the court found that the check was the property of Hancock, and, when delivered to him by Mrs. Rackley, he indorsed it in blank and deposited it with the Post bank for collection, and that no deposit slip was issued to Hancock at that time, nor was his account credited with the amount of the check; that neither Hancock nor Mrs. Rackley, who made the check for her mother, Mrs. Adams, made any agree-

ment with the Post bank with reference to the manner and method in which the collection of the check should be handled. The court further found that, if the Post bank had sent the check to the Spur National Bank, it would have been collected by that bank on August 30th, and that the City National Bank of Spur, on the 29th and 30th days of August, had on hand sufficient funds to the credit of Mrs. Adams out of which said check would have been paid. The court further found that Hancock had no notice of any customs or practices engaged in between the Post bank and the Spur bank or any other bank with reference to the method of handling such transaction.

■ The general rule governing in such cases is stated in 6 Tex. Jur. 296, § 147: "In the absence of a stipulation to the contrary, a collecting bank is held to be negligent in sending paper direct to the drawee bank when other channels of collection in that locality are available to it."

The text is in accordance with the rule announced in Friends in Need Society of Bell County v. Peterson (Tex. Civ. App.) 9 S.W.(2d) 1110; Jones v. Clark (Tex. Civ. App.) 30 S.W. (2d) 577; First National Bank of Corsicana v. City National Bank of Dallas, 12 Tex. Civ. App. 318, 34 S. W. 458.

■ The finding by the trial judge that Hancock had no notice of any bank usages or customs which would in any way defeat his rights is binding upon us.

It is held in Slone v. First National Bank of Gorman (Tex. Com. App.) 276 S. W. 209, 210:

"In the absence of contract to the contrary, it seems to be well settled that a bank acting as collecting agent for its customer is without authority to accept for the debt of his principal anything other than money or that which passes at par as such.

"In Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261, it is said:

" 'It is settled law that a collecting agent is without authority to accept for the debt of his principal anything but "that which the law declares to be a legal tender, or which is by common consent considered and treated as money, and passes as such at par." * * * The rule applies to a bank receiving commercial paper for collection, and if such bank accepts the check of the party bound to make payment and surrenders the paper, it is responsible to the owner for any resulting loss. * * * It is unnecessary to cite other decisions since they are all practically uniform.' "

■ When the Post bank accepted in payment of appellee's check the draft of the Spur bank on the Fort Worth bank, payable to the

Post bank, and issued to Hancock its deposit slip and credited his account with the amount, this constituted an acceptance of said draft by the Post bank, and made it the unconditional owner of the draft without authority to charge Hancock's account with the amount when payment was refused by the Fort Worth bank. While it is true that August 31st was Sunday and September 1st was a legal holiday, these facts in no way lessen the liability of the Post bank. According to the Peterson Case, supra, and Texas Elec. Service Co. v. Clark (Tex. Civ. App.) 47 S. W. 483, the liability of the Post bank to plaintiffs Hancock became fixed when it received the draft issued by the Spur bank, credited Hancock's account with the amount, and delivered him a certificate of deposit.

As said in 6 Tex. Jur. 287, § 139: "As tending to support the conclusion that the Bank has unqualifiedly undertaken the risk of the paper, consideration is to be given to the fact that the Bank was made the payee of the paper."

It is true that there is a conflict between Dietrich and other witnesses upon the question as to who is responsible for making the check to Hancock payable to the bank. The court has found that the responsibility rests upon the bank.

In so far as the judgment decrees a recovery by Hancock against the Post bank, it must be affirmed.

We also affirm the judgment in so far as it vests the title to the real estate in Mrs. Adams and Mrs. Rackley.

■ We are of the opinion, however, that there was error in that portion of the judgment which decrees a recovery in favor of the Post bank and against the Fort Worth bank.

The draft issued by the Spur bank in favor of the Post bank against whatever funds it may have had in the Fort Worth bank did not constitute an equitable assignment of any part of said funds. It was an ordinary banking transaction, and it was not shown that any special agreement existed between any of the parties which would constitute an assignment. The draft for $900 did not purport to be an assignment of any special deposit which the Spur bank had in the Fort Worth bank. Under the provisions of article 5940, R. S., section 127, and article 5947, § 189, there could be no assignment under the facts shown by the record.

Section 127 provides: "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

Section 189 provides: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

No acceptance of the Spur bank's draft by the Fort Worth bank was shown. In fact, the record shows that the Fort Worth bank refused either to accept or to pay the check. In the case of Hewitt v. First National Bank, 113 Tex. 100, 252 S. W. 161, the Supreme Court held that such transaction did not constitute an assignment, and the Negotiable Instruments Law is not referred to in the opinion, but these provisions of the Negotiable Instruments Law have been considered and construed so often in transactions similar to the one under consideration and have been uniformly held not to constitute an assignment of the fund than an extended discussion is not thought to be necessary.

In its cross-action the Post bank alleged that all parties contemplated that a draft or check of some nature representing the money or credit would be received from the City National Bank of Spur, or that, when collected, would produce funds as is usual and customary among banks, and that said collection was intended to be made in the usual way that banks make collections. This allegation was sustained by the evidence, and we overrule the contention that the transaction constituted an assignment of any part of the funds held by the Fort Worth bank. Hatley v. West Texas National Bank (Tex. Com. App.) 284 S. W. 540; 6 Tex. Jur. 268, § 127; Odle v. Barnes, 117 Tex. 174, 299 S. W. 635; Huffman v. Farmers' National Bank (Tex. Civ. App.) 10 S.W.(2d) 753, and authorities cited; Austin v. Public National Bank (Tex. Civ. App.) 2 S.W.(2d) 463.

The receiver of the Spur bank was not made a party to this proceeding.

In the case of Earle v. Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 44 L. Ed. 1146, the United States Supreme Court held that the scheme of the statute relating to suspended national banks is that from the time of a bank's suspension all of its assets of whatever kind as they are at the time of suspension pass to the receiver. Anderson v. Cronkleton (C. C. A.) 32 F.(2d) 170.

The Fort Worth bank attacks the court's eighth finding of fact, which is as follows: "I find that at the time of the making of said draft [by the Spur Bank] on the 30th day of August, 1930, and for some thirty days thereafter, the City National Bank of Spur, Texas, had on deposit with the defendant First National Bank of Ft. Worth, Texas, subject to its draft or check and which had not been assigned or transferred to anyone, a sum of money in excess of $900.00."

■ The statement of facts shows that the Fort Worth bank did have funds on hand

to the credit of the Spur bank, but, upon the appointment of a receiver by the Comptroller, these funds passed into the hands of the receiver, but he took them subject to all the terms of the written contract hereinbefore referred to between the Fort Worth bank and the Spur bank, which entitled the former to dispose of the notes held as collateral and to apply cash in its hands to the payment of .the Spur bank's indebtedness to it. In other words, the appointment of a receiver for the Spur bank could not impair the obligation of the contract which existed between the two banks.

■ The assets of an insolvent national bank are not brought under the control or protection of the federal courts by being taken into custody by a receiver appointed by the Comptroller of the Currency. Snohomish County v. Puget Sound National Bank (C. C.) 81 F. 518.

■ It is held that, after the insolvency of a national bank and the appointment of a receiver, the bank is still liable upon its contracts made prior thereto in the same manner as a natural person. Chemical National Bank v. Hartford Deposit Co., 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595, affirming 156 Ill. 522, 41 N. E. 225.

■ The receiver for an insolvent national bank stands in place of the bank, taking the assets of the insolvent corporation in trust for its creditors, subject, however, to all claims and defenses that might have been interposed against the insolvent corporation and chargeable with knowledge of all facts known to the bank, affecting the character of such assets. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Brown v. Schleier (C. C.) 112 F. 577; Id. (C. C. A.) 118 F. 981, and affirmed 194 U. S. 18, 24 S. Ct. 558, 48 L. Ed. 857. He has no greater right in obligations payable to the bank than the bank itself, Cutler v. Fry (D. C.) 240 F. 238, and he can do no act which will impair the obligations of a contract entered into with the bank before its insolvency, Wolf v. National Bank, 178 Ill. 85, 52 N. E. 896; 53 C. J. pp. 99, 102; 40 A. L. R. 916, note (i).

Since the case seems to have been well and thoroughly tried and fully developed by all parties, it is our opinion that it is unnecessary to remand it for another trial. In so far as the judgment decrees a recovery by the Post bank against the Fort Worth bank, it is reversed and here rendered that the Post bank take nothing and that the Fort Worth bank recover its costs. As so reformed, the judgment is affirmed.